# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DARIUS LEIGH GILKEY,

Defendant-Appellant.

UNPUBLISHED
January 26, 2016

No. 323507
Wayne Circuit Court
LC No. 14-000531-FC

Before: STEPHENS, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree murder, MCL 750.316, and first-degree criminal sexual conduct (CSC) (the actor is armed with a weapon or any article fashioned in a manner to lead the victim to reasonably believe it is a weapon), MCL 750.520b(1)(e). Defendant was sentenced, as a third habitual offender, MCL 769.11, to life without parole for the first-degree murder conviction, and to 35 to 50 years for the CSC conviction. We affirm.

Defendant first argues that there was not sufficient evidence that he killed SM, or committed an act of first-degree criminal sexual conduct. We disagree.

When reviewing a claim of insufficient evidence, this Court reviews the record de novo. *People v Mayhew*, 236 Mich App 112, 124; 600 NW2d 370 (1999). "The evidence is sufficient to convict a defendant when a rational factfinder could determine that the prosecutor proved every element of the crimes charged beyond a reasonable doubt." *People v Cain*, 238 Mich App 95, 117; 605 NW2d 28 (1999) (citation omitted). The evidence should be viewed in the light most favorable to the prosecution. *People v Hardiman,* 466 Mich 417, 421; 646 NW2d 158 (2002). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). In addition, identity is an element of every criminal offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "[C]ircumstantial evidence and reasonable inferences arising therefrom may constitute satisfactory proof of the elements of the offense." *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008).

-1-

At trial, a medical examiner testified that SM's cause of death was homicide. His conclusion was based on the multiple, deep stab wounds to SM's neck and chest, which resulted in massive blood loss and a collapsed lung. These facts are sufficient to show that the killing was intentional, and thus, establish the first element of first-degree murder.

Premeditation requires that a defendant have time to take a "second look" before killing. *Unger*, 278 Mich App at 229 (quotation marks and citation omitted). The medical examiner also testified that some of the wounds on SM's body were "torture wounds," made for the specific purpose of causing her pain. If defendant had time to inflict torture wounds, a reasonable trier of fact could infer that he also had time to take a second look before killing.

SM's body was found in an abandoned house. There was only a small amount of blood in the house where SM's body was found, and there were drag marks on her body. A reasonable factfinder could infer that the killer moved the body to the house to conceal the crime. Evidence that a defendant attempted to conceal the crime can also support a finding that the crime was premeditated. *People v Gonzalez*, 468 Mich 636, 642; 664 NW2d 159 (2003).

The final element is defendant's identity as the murderer. Defendant argues that the evidence only shows that he had sex with SM. However, there is sufficient evidence implicating defendant in SM's murder, and the CSC inflicted upon her. SM was urgently seeking a ride home when she disappeared. At 11:14 p.m. she called her friend seeking a ride, and at 11:18 p.m. her telephone became invisible to the surrounding cellular towers. Her friend arrived at 11:30 p.m., and SM was nowhere to be found. SM was stabbed to death and her body was found topless with sperm in her mouth, and blood under a fingernail on the left hand. From these facts, a reasonable juror could infer that the killer took SM against her will, forced her to engage in fellatio by threatening her with a knife or similar object, and then killed her. Based on trial testimony, a reasonable juror could also infer that SM tried to defend herself, and that the attacker's blood was thus deposited under her fingernail. Based on the DNA evidence that the blood and sperm came from defendant, a reasonable juror could infer that defendant committed the offenses for which he was convicted.

Defendant was also convicted of violating MCL 750.520b(1)(e), which states that "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and … [t]he actor is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon." Sexual penetration means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r).

The presence of semen in the oral cavity of SM's body could lead a reasonable trier of fact to conclude that sexual penetration occurred. The manner of SM's death, stabbing, could lead a reasonable factfinder to infer that defendant had a weapon. There was thus sufficient evidence of CSC.

Defendant next argues that he was denied his right to counsel when the court would not allow him to replace his court-appointed attorney. We disagree.

-2-

A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. As this Court has explained[,] [a]n indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic. [*People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (quotation marks, brackets, and citations omitted).]

First, defendant wanted to have a new DNA sample taken and tested. Defense counsel did not support defendant's request. To retest DNA, defense counsel would submit a motion to retest DNA. See *People v Greene*, 495 Mich 948; 843 NW2d 516 (2014) (order denying motion to retest DNA). Thus, more precisely stated, defendant disagreed with defense counsel's refusal to file a motion to have defendant's DNA retested. Counsel's decision about whether to file a motion "clearly falls within the categories of professional judgment and trial strategy that are matters entrusted to the attorney . . . ." *People v Traylor*, 245 Mich App 460, 463; 628 NW2d 120 (2001). Thus, defense counsel's decision on this point is not a matter of fundamental trial tactics, and therefore disagreement between counsel and defendant on this issue would not constitute good cause for replacement of defendant's attorney. Further, defendant apparently agreed that it would be poor strategy to have his DNA retested. When the judge explained the risk that retesting could lead to a second positive result, defendant said, "[o]kay." Thus, the trial judge did not abuse his discretion in denying defendant's request to the extent that it pertained to retesting of defendant's DNA.

Defendant also requested that a DNA expert testify for the defense regarding DNA testing procedures. Defendant was indigent. Again, any request for an expert witness hired at public expense would be made by filing the appropriate motion with the trial court. See *People v Tanner*, 469 Mich 437, 443; 671 NW2d 728 (2003). Trial courts should not allocate public funds to hire experts for indigent defendants unless that expert testimony would "likely benefit the defense." *Id.* (quotations marks and citation omitted). Defense counsel investigated the possibility of hiring an expert, and thought it would not be beneficial to the defense because an expert would only testify about procedures related to DNA testing, and not actually retest defendant's DNA. Also, as mentioned, whether to file a motion is a matter of trial strategy, and is left to the attorney. *Traylor*, 245 Mich App at 463. The trial court did not abuse its discretion in refusing to replace defense counsel for not filing a motion to hire a DNA expert at public expense.

Finally, defendant argues that the trial court erred in admitting evidence related to QR's murder. We disagree.

The trial court properly admitted the evidence of QR's killing. MRE 404(b)(1) provides:

-3-

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the mistake is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior to subsequent to the conduct at issue in the case.

Pursuant to *Sabin*, 463 Mich at 65, when a plan or scheme is sufficiently similar, evidence of another act may be used for the inference that a defendant used the same plan or scheme in the charged offense.

In general, this Court reviews a trial court's decision regarding the admissibility of other-acts evidence for an abuse of discretion. However, decisions regarding the admission of evidence frequently involve preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence. Questions of law are reviewed de novo. [*People v Dobek*, 274 Mich App 58, 84-85; 732 NW2d 546 (2007); citations omitted.]

A trial court's decision on a close evidentiary issue cannot ordinarily be an abuse of discretion. *Sabin*, 463 Mich at 67.

Evidence of similar conduct can be used to show that the charged offense occurred, even when not part of a "single continuing conception or plot," when the "uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of the common plan, scheme, or system." *Sabin*, 463 Mich at 63-64. The *Sabin* Court affirmed the lower court's admission of MRE 404(b)(2) evidence regarding sexual abuse of a girl, to show sexual abuse of a different girl, where the victims both had a father-daughter relationship with the defendant, both victims were of similar age, and the defendant used parental authority to manipulate both victims into silence by suggesting that they would break up the family if they told anyone about the abuse. *Id.* However, there were also significant differences between the charged act and the act admitted pursuant to MRE 404(b). *Id.* The defendant performed oral sex on one victim, frequently over a period of years, at night, in the victim's bedroom. *Id.* The other victim suffered one isolated act of sexual intercourse committed in the afternoon. *Id.* Despite these differences, the *Sabin* Court did not find the trial court abused its discretion in admitting the evidence. *Id.*

There are significant similarities between SM's and QR's murders. Both killings involved young, petite black women. Both were taken at night, in Detroit, 12 days apart. They were both forced into sexual acts, and semen was deposited in both of their bodies. Both victims were stabbed in the neck, and died of stab wounds. Both bodies were concealed in vacant areas. Their assaults and murders occurred within close proximity to each other. While there were some differences, the crimes were at least as similar as the crimes in *Sabin*. *Id.* The trial court did not abuse its discretion in admitting the other acts evidence.

Defendant also argues that the trial court abused its discretion in not excluding the other acts evidence under MRE 403. MRE 403 states: "[a]lthough relevant, evidence may be excluded

-4-

if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). "[T]here is a heightened need for the careful application of the principles set forth in MRE 403" when the trial court admits other acts evidence under MRE 404(b). *Id.*

Defendant argued that he did not commit these crimes, meaning he disputed, in part, whether he committed the actus reus of the offenses. In *Sabin,* the Michigan Supreme Court declined to find an abuse of discretion because "the evidence was admissible to show the actus reus of the offense." *Sabin*, 463 Mich at 70-71. Thus, while there was a risk of undue prejudice, the evidence was also highly probative.

Defendant further argues that the admission of evidence related to QR's killing was so fundamentally unfair that it violated defendant's Fourteenth Amendment right to due process. US Const, Am XIV. This issue is unpreserved because defendant did not move for a new trial on this basis. This Court reviews allegations of unpreserved constitutional error for plain error. *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). This requires that: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* at 763. In addition, "[t]he reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 774. As discussed above, defendant has not demonstrated that the trial court committed any error, much less plain error.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto