# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 15, 2016

Plaintiff-Appellee,

v

No. 324885
Wayne Circuit Court
LC No. 14-000744-01-FC

MARVIN DWAYNE NOBLE,

Defendant-Appellant.

Before: SAAD, P.J., and METER and MURRAY, JJ.

PER CURIAM.

A jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a); carrying a concealed weapon (CCW), MCL 750.227; possession of a firearm during the commission of a felony, second offense (felony-firearm 2d), MCL 750.227b; and felon in possession of a firearm, MCL 750.224f. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to life in prison for the first-degree murder conviction, 20 to 30 years in prison for the CCW and felon-in-possession convictions, and five years in prison for the felony-firearm 2d conviction. Defendant appeals as of right, and we affirm.

Defendant's convictions arose from the August 5, 2013, shooting death of Dennis Washington in an alley behind a Rite Aid store at the corner of Vernor Highway and Springwells Street in Detroit.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence of premeditation and deliberation to support his conviction of first-degree premeditated murder. He contends that there was no evidence of any pause between the formation of a specific intent to kill and the shooting. We disagree.

A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo; we review the evidence in the light most favorable to the prosecution to determine whether the trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175, 177; 804 NW2d 757 (2010). "All conflicts with regard to the evidence must be resolved in favor of the prosecution." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005). Moreover, circumstantial evidence

-1-

and reasonable inferences from the evidence can be sufficient to prove the elements of a crime. *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993).

The elements of first-degree premeditated murder are: (1) an intentional killing of a human being (2) with premeditation and deliberation. *People v Hoffmeister*, 394 Mich 155, 158-159; 229 NW2d 305 (1975); *People v DeLisle*, 202 Mich App 658, 660; 509 NW2d 885 (1993). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998) (citation and quotation marks omitted). Premeditation and deliberation require sufficient time to allow the defendant to reconsider his actions, or in other words, sufficient time to "take a second look." *People v Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999) (citation and quotation marks omitted). Factors relevant to the establishment of premeditation and deliberation include: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Id*. (citation and quotation marks omitted).

The evidence showed that defendant had sold drugs to Washington in the past. Defendant was in a non-exclusive sexual relationship with Joanna Smith, who dropped defendant off at a Rite Aid store in her black Impala, and a witness heard defendant call Washington to the alley behind the store, saying, "Hey, man, come here, I want to show you something." The witness stated that defendant was "kind of casing the area . . . to see who's around or whatever." A Rite Aid customer, Martha Porter, heard the gunshot and saw a man holding a gun with his right arm raised. According to the autopsy findings, the gun was pressed against Washington's head at the time of firing. Given that defendant only needed time to take a second look, the evidence that defendant raised a gun to Washington's head and fired at close range, after calling him over to "show [him] something" while "casing the area," supports a finding that defendant premeditated the killing. See, generally, *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011), and *People v Anderson*, 209 Mich App 527, 537-538; 531 NW2d 780 (1995). Afterward, a witness observed, and surveillance video confirmed, defendant running from the scene. Defendant then called Smith for help to escape from the scene. Defendant's flight evidenced his consciousness of guilt. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995) (evidence of flight is probative because it may indicate consciousness of guilt, although evidence of flight by itself is insufficient to sustain a conviction). There was sufficient evidence of premeditation and deliberation to support defendant's conviction of first-degree premeditated murder.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant raises numerous claims that he was denied the effective assistance of counsel. We disagree. Although defendant raised his claims of ineffective assistance of counsel in a posttrial motion, because no *Ginther*[1] hearing was held, our review of this issue is limited to errors apparent from the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706

---

[1] *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973).

(2007). As this Court explained in *People v Gaines*, 306 Mich App 289, 300; 856 NW2d 222 (2014):

> Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. To demonstrate ineffective assistance, defendant must show: (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that this performance so prejudiced him that he was deprived of a fair trial. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. [Citations and quotation marks omitted.]

## A. IDENTIFICATION EXPERT

Defendant first argues that defense counsel was ineffective for failing to consult and call an expert in eyewitness identification to impeach the in-court identifications of defendant by Esther Garza and Sylvia Gallegos, who saw defendant outside the Rite Aid store at the time of the shooting.

MCL 775.15 provides a trial court with discretion to appoint an expert witness for an indigent defendant upon request. *People v Carnicom*, 272 Mich App 614, 616-617; 727 NW2d 399 (2006). The statute requires a defendant to show that an expert's testimony is required to enable the defendant to "safely proceed to a trial . . . ." MCL 775.15. To be entitled to the appointment of an expert witness,

> an indigent defendant must demonstrate a nexus between the facts of the case and the need for an expert. *People v Jacobsen*, 448 Mich 639, 641; 532 NW2d 838 (1995). It is not enough for the defendant to show a mere possibility of assistance from the requested expert. [*People v*] *Tanner*, [469 Mich 437, 443; 671 NW2d 728 (2003)]. Without an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness. *Jacobsen*, [448 Mich at 641]. [*Carnicom*, 272 Mich App at 617.]

Nothing in the record demonstrates that an identification expert was necessary for defendant to safely proceed to trial. MCL 775.15. Through cross-examination, defense counsel challenged the strength and reliability of Garza's and Gallegos's identification testimony, and elicited discrepancies and arguable bases for questioning the accuracy of the various identifications. In closing argument, defense counsel argued that Garza's and Gallegos's identifications of defendant should not be believed. He noted that Gallegos and Garza could not identify defendant in pretrial photographic arrays, and claimed that they only identified defendant in court because he was "sitting here at the defense table." Counsel cited "suggestiveness" and claimed that Gallegos and Garza wanted to help the police, so they tried to "identify somebody" in court. Defense counsel contrasted their testimony with that of Porter, who could not identify anyone, and with a witness who identified someone else running from the scene on surveillance video. Defense counsel also discounted Smith's testimony as biased and untrue, arguing that she was only testifying to avoid being charged for Washington's murder. Also, defense counsel argued that the physical evidence pointed to a different shooter, who was

-3-

left-handed, not right-handed. Given defense counsel's cross-examination and thorough challenge to the identifications in closing, defendant cannot show that defense counsel was ineffective for failing to request the appointment of an identification expert, or that he was prejudiced by the absence of such an expert at trial.

We also reject defendant's request to remand this case for a *Ginther* hearing. We note that defendant did not file a separate motion to remand under MCR 7.211(C)(1)(a). Regardless, defendant has not demonstrated that further factual development is required for appellate consideration of this issue. See MCR 7.211(C)(1)(a)(ii).

## B. WOUND EXPERT

Defendant next argues that defense counsel was ineffective for failing to investigate and call an expert to testify regarding Washington's wound, and whether it demonstrated the handedness of the shooter or whether the shooter was relatively short.

Preliminarily, defendant fails to offer any factual predicate for his claim that defense counsel failed to investigate an expert opinion about the wound. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (a defendant raising a claim of ineffective assistance of counsel bears the burden of proving the factual predicate of his or her claim). Moreover, nothing in the record demonstrates that another expert testifying about the wound was necessary for defendant to safely proceed to trial. MCL 775.15. Defendant claims that the medical examiner, Dr. Jeffrey Hudson, foreclosed the possibility that the shooter was short and left-handed, but defendant's claim is inconsistent with the record. Dr. Hudson specifically declined to offer an opinion about the height of the shooter or about whether the shooter was right-handed or left-handed. In closing argument, defense counsel relied on the absence of an opinion in this regard to argue that the shooter's physical attributes were different from defendant's.

Defendant submits, without any factual support, that an expert would have demonstrated that the issues surrounding handedness and height were "not at all clear." Again, that testimony would have been cumulative in light of Dr. Hudson's corresponding testimony that he could not offer an opinion on handedness and height. Later in his brief, defendant claims that the "mannerism of the victim's wound suggested that the shooter was left handed and short." Again, however, defendant offers no factual support for this claim. *Hoag*, 460 Mich at 6. Dr. Hudson specifically testified that the wound, alone, did not determine handedness or height, and the only witness who saw the shooter with a gun at the time of the shooting testified that it was in his right hand. Therefore, defendant has failed to establish that, but for the failure to call another expert on the wound, the outcome of the trial would have been different.

## C. EXAMINATION OF THE MEDICAL EXAMINER

Defendant also claims that defense counsel was ineffective for failing to object when Dr. Hudson allegedly testified outside of his area of expertise and regarding hypothetical scenarios. Because defendant fails to provide citations to the record in support of his argument, it is unclear which evidence he believes was objectionable. Accordingly, defendant's argument has been abandoned. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (failure to adequately brief a question on appeal is tantamount to abandoning it).

## D. FAILURE TO MOVE TO SUPPRESS

Defendant next claims that defense counsel was ineffective for failing to move to suppress the in-court identification of him by Gallegos and Garza. He argues that the in-court identifications were improper because there was no "independent basis" for them, given that the witnesses failed to identify him in a pretrial photographic array, and his presence at the defense table at trial was unduly suggestive.

This Court addressed and rejected a similar argument in *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995), stating:

> The need to establish an independent basis for an in-court identification arises where the pretrial identification is tainted by improper procedure or is unduly suggestive. *People v Laidlaw*, 169 Mich App 84, 92; 425 NW2d 738 (1988); *People v Syakovich*, 182 Mich App 85, 89; 452 NW2d 211 (1989). At no point has defendant argued that the lineup procedure was improper or unduly suggestive. Rather, defendant's argument is premised on the fact that Byrd did not identify defendant at a pretrial corporeal lineup, but identified him in court (at the preliminary examination) as the man who poured the gasoline in the store. The fact that Byrd did not identify defendant at the lineup did not render his subsequent in-court identification inadmissible. *Id*. Rather, this was a credibility issue that was properly before the jury to determine. The trial court did not commit clear error in allowing the in-court identification testimony.

Just as in *Barclay*, defendant does not argue that the photographic arrays were improper or unduly suggestive. The thrust of his claim is that because the witnesses failed to identify him in the photographic arrays, his presence at the defense table at trial was unduly suggestive. As this Court explained in *Barclay*, the inability to identify defendant previously did not render the subsequent in-court identifications inadmissible. Instead, it created a credibility issue, which, as discussed earlier, defense counsel relied upon in his cross-examination and closing argument. Thus, any motion to suppress the in-court identifications would have been futile, and defense counsel was not ineffective for failing to make a futile motion. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

## III. PROSECUTORIAL ERROR

## A. DISCLOSURE OF EVIDENCE

Defendant makes numerous claims that the prosecutor violated his right to due process under *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), by failing to disclose evidence. We disagree.

Due process demands that a criminal defendant have "a meaningful opportunity to present a complete defense," which includes a defendant's receipt of exculpatory evidence. *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006) (citation and quotation marks omitted). A prosecutor must disclose exculpatory and material evidence in his or her possession, regardless of whether the defendant has asked for the disclosure. *People v Schumacher*, 276

Mich App 165, 176; 740 NW2d 534 (2007). To establish a *Brady* violation, a defendant must prove: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). When evidence is lost or not preserved and the exculpatory value of the evidence is indeterminate and only potentially useful, a defendant must show that the government acted in bad faith in failing to preserve the evidence. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988); *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). "[E]vidence that the defense knew of favorable evidence[] will reduce the likelihood that the defendant can establish that the evidence was suppressed for purposes of a *Brady* claim." *Chenault*, 495 Mich at 155.

First, defendant argues that the prosecutor failed to provide the results of DNA analysis of two Pepsi drinks and two straws removed from Smith's black Impala. Defendant fails to offer any evidence that the prosecutor suppressed any DNA analysis. Rather, the officer in charge testified that he sent the evidence to the Michigan State Police, but he never received a report back. The officer in charge denied that there could be an existing report that neither he nor the prosecutor had. He explained, "If there was, I would have it." Further, although the presence or absence of defendant's DNA on the Pepsi drinks and straws would have been material to whether defendant was ever in Smith's car, that fact was not in dispute—they were in a relationship and she drove him places. There is simply no evidence that any DNA analysis would have been favorable to the defense of these charges. Even if defendant's DNA was not on the Pepsi drinks or straws, anyone, including Smith, could have left these items in the car at any time, before or after the shooting. The DNA analysis would not have disproved Smith's testimony that she dropped defendant off at Rite Aid—an event that was videotaped. Because defendant has not shown that the prosecution suppressed the DNA analysis, or that any test results would have been favorable to his case, he has failed to demonstrate a violation of his constitutional due process rights.

Second, defendant argues that the prosecutor failed to provide the defense with the ballistics results from the bullet recovered from Washington. The officer in charge testified about the bullet on direct examination at trial:

> The morgue bullet was sent to the lab for testing, and unfortunately when we don't have a weapon to compare it to, they can only give us a best guesstimate. They can measure it for size and just tell us that it's larger than this caliber or smaller than this caliber.

He added that the bullet "was pretty beat up." At the preliminary examination, the officer in charge testified that the caliber information would be in a report, which would be in his file. On cross-examination, he was asked if he would provide the report to defense counsel and he agreed. Later, the discovery order required any reports from experts that a party might call at trial to be turned over. The record does not establish whether the report was ever provided to defendant. However, given the testimony by the officer in charge about his willingness to provide the report, and the absence of any information indicating that a report was produced and not disclosed, defendant has not established that the prosecution actually suppressed it. Moreover, although defendant claims that the report was material and would have been favorable to his defense, and he claims that he typically carried a gun with an "extended clip" and a report

could have shown that the bullet did not come from a gun with an "extended clip," he offers no scientific evidence that ballistics information regarding one bullet could determine whether it was fired from a standard-sized clip or an extended clip. Because defendant has not shown that the prosecution suppressed the report or that it would have been favorable to his case, he has failed to demonstrate a violation of his constitutional due process rights.

Third, defendant argues that the prosecutor failed to disclose his telephone records and the telephone records of Washington. Agent Stan Brue, an expert in the forensic analysis of cellular call records, testified that he did not have cellular telephone records for Washington or defendant. Defendant offers no contrary proof that the prosecution had the telephone records and suppressed them. Defendant claims that the telephone records would have discredited Smith, who claimed that she never went to defendant's parents' apartment after the shooting and defendant instead left in a cab. However, Smith's own telephone records showed that her telephone was used in a sector near defendant's parents' apartment. Any evidence about defendant's non-use of his own telephone to call a taxi would essentially have been cumulative. In addition, defendant claims that evidence of a lack of telephone communication between himself and Washington may have discredited David Lee's testimony that defendant and Washington engaged in narcotics sales together. However, with no proof regarding those records, defendant cannot demonstrate that the records would have helped more than hindered his case. Moreover, there is no evidence that defendant was precluded from access to his own telephone records and, if they were favorable, he could have made use of them during trial. Defendant cannot prove that the prosecution suppressed the records and has not shown that they would have been favorable to his case. He has failed to demonstrate a violation of his constitutional due process rights.

Fourth, defendant argues that the prosecutor failed to disclose to the defense tacit benefits that Smith and Lee received in exchange for testifying against him. He notes that Smith was never charged in this murder and Lee was released from jail. Defendant offers no evidence that any agreement with Smith was suppressed. Rather, it was clear from the record at trial that the officer in charge requested charges against both defendant and Smith in this case, but the prosecutor had declined to sign the warrant against Smith until he interviewed her. Smith testified that she was not testifying to get herself out of jail.

Similarly, Lee testified at trial that he was not trying to "get out of my crimes." Defendant offers no evidence that Lee's release from jail was a byproduct of his agreement to testify, as opposed to a mere coincidence in timing, particularly in light of Lee's explanation that his probation violation was a minor offense or "nothing." At the motion for a new trial, the appellate prosecutor again asserted on the record that there were no agreements between the prosecution and Smith or Lee. Absent any evidence of suppression, defendant cannot establish a *Brady* violation.

## B. ADDITIONAL CLAIMS OF PROSECUTORIAL ERROR

Defendant raises additional claims of prosecutorial error, which he failed to preserve with a contemporaneous objection and request for a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant's unpreserved claims of prosecutorial error are reviewed for plain error affecting substantial rights. *People v Abraham*, 256 Mich App 265, 274;

662 NW2d 836 (2003). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocence." *People v Ackerman,* 257 Mich App 434, 448-449; 669 NW2d 818 (2003). Reversal is not required if a jury instruction could have cured the error. *Id.* at 449.

Defendant complains that the prosecutor knowingly allowed perjured testimony to be introduced at trial. In *People v Gratsch*, 299 Mich App 604, 619-620; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013), this Court stated:

> A defendant's right to due process guaranteed by the Fourteenth Amendment is violated when there is any reasonable likelihood that a conviction was obtained by the knowing use of perjured testimony. Accordingly, a prosecutor has an obligation to correct perjured testimony that relates to the facts of the case or a witness's credibility. When a conviction is obtained through the knowing use of perjured testimony, a new trial is required only if the tainted evidence is material to the defendant's guilt or punishment. So whether a new trial is warranted depends on the effect the misconduct had on the trial. The entire focus of [the] analysis must be on the fairness of the trial, not on the prosecutor's or the court's culpability. [Citations and quotation marks omitted.]

Defendant claims that the prosecutor allowed Smith to perjure herself. Defendant references Smith's testimony that she was at a particular building with defendant before going to Rite Aid. He claims that she was lying about where she had come from because the building is north of Rite Aid on Vernor Highway, and a video shows her driving from the south on Vernor to Rite Aid. From Smith's testimony, however, the jury could infer that she took an alternate route to drop defendant off in front of the Rite Aid store. The prosecutor had no duty to correct Smith's testimony and defendant cannot establish prosecutorial error on this theory.

Defendant claims that the video was not "played out in its totality" and some was "purposely omitted." Defendant does not argue what content was missing from the recording. Likewise, defendant notes that the surveillance system that recorded the events surrounding the crimes were not calibrated to real time, but he does not argue how the errant calibration relates to his prosecutorial error claim. Therefore, these arguments are abandoned. See *Kevorkian*, 248 Mich App at 389.

Defendant also argues that "the prosecutor mischaracterize[d] the nature of the phone calls" between defendant and Smith. Defendant states, "[o]mitted . . . from the prosecutor[']s argument and witness testimony is a call from Smith to [defendant] at 12:36 p.m. before she received a call from Appellant at 12:50 p.m." Contrary to defendant's claim, evidence of the call at 12:36 p.m., from Smith to defendant, was introduced at trial through Agent Brue. In addition, a chart that Agent Brue created regarding the calls to and from Smith's number on August 5, 2013, was admitted into evidence. In closing argument, the prosecutor did not "omit" the 12:36 p.m. call, but rather maintained that this telephone call demonstrated that Smith and defendant were in contact, supporting Smith's testimony that defendant asked her for a ride. Therefore, defendant's claim that the 12:36 p.m. call was omitted from the testimony and argument is inconsistent with the record.

Defendant next claims that the prosecutor " 'omitted' from the jury . . . Smith's call to 911 at 12:51 p.m." Agent Brue only testified that a call was made to 9-1-1 at 12:51:37. He did not testify that Smith made the call. Defendant's claim that Smith called 9-1-1 is inconsistent with the record showing that her telephone was being used on another call with defendant around the same time. Any claim that the prosecutor erred with regard to the 9-1-1 call fails.

Defendant claims that the prosecutor elicited false or perjured testimony from Smith that she and defendant went to a particular building after the shooting. Smith testified on cross-examination that they stayed there for more than an hour. Defendant claims that this testimony was false because the telephone records show that she was not in that area. At the outset, we note that the prosecutor was not required to disbelieve Smith's testimony about where she went after the shooting because her testimony was possibly contradicted by other evidence.[2] See, generally, *People v Lester*, 232 Mich App 262, 278-279; 591 NW2d 267 (1998), overruled in part on other grounds by *Chenault*, 495 Mich 142. In any event, the prosecutor not only elicited Smith's testimony, but also offered into evidence Smith's telephone records, including the sectors where each call was made. To the extent that this evidence presented a possible inconsistency, the prosecutor equipped the jury to evaluate it, in full, and perform its role as the trier of fact. See *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007) ("[a] prosecutor's good-faith effort to admit evidence does not constitute misconduct"). In addition, contrary to defendant's claim on appeal, defense counsel cross-examined Smith about the timing of Smith's and defendant's return to the building. Defense counsel also attacked Smith's credibility in other, even more relevant respects, including the fact that she only pointed the finger at defendant when she faced charges. Defendant has not established a plain error affecting his substantial rights.

Next, defendant argues that the prosecutor committed error by improperly introducing other-acts evidence, prohibited by MRE 404(b), about defendant's drug dealing with Washington and by failing to provide proper notice of this evidence.

MRE 404(b) provides:

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, that upon request by the accused, the prosecution shall provide reasonable notice in advance of trial, or during trial if the military judge excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

(2) The prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause

---

[2] The telephone could have been in another's possession.

shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

Relevant other-acts evidence is admissible unless the proponent's sole theory of relevance is to show the defendant's criminal propensity to prove that he committed the charged offenses. *People v VanderVliet*, 444 Mich 52, 63; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Accordingly, MRE 404(b) is inclusionary rather than exclusionary. *Id*. at 64. In *People v Smith*, 282 Mich App 191, 194; 772 NW2d 428 (2009), this Court explained:

> In deciding whether to admit evidence of other bad acts, a trial court must decide: first, whether the evidence is being offered for a proper purpose, not to show the defendant's propensity to act in conformance with a given character trait; second, whether the evidence is relevant to an issue of fact of consequence at trial; third, [under MRE 403] whether its probative value is substantially outweighed by the danger of unfair prejudice in light of the availability of other means of proof; and fourth, whether a cautionary instruction is appropriate.

As defined by MRE 401, "relevant evidence" is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

> The Michigan Supreme Court has discussed unfair prejudice under MRE 403 as follows:

> Obviously, evidence is offered by an advocate for the always clear, if seldom stated, purpose of "prejudicing" the adverse party. Recognizing this, the Supreme Court in adopting MRE 403 identified only unfair prejudice as a factor to be weighed against probative value. This unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock. [*People v Pickens*, 446 Mich 298, 336-337; 521 NW2d 797 (1994) (citation and quotation omitted).]

> As the prosecutor argued in closing, the evidence that defendant was a drug dealer who sold narcotics to Washington was offered for a limited purpose: to establish a reason for the killing. In particular, the prosecutor argued that a business relationship involving narcotics between defendant and Washington "could cause there to be a friction that ultimately comes to the death of . . . Washington . . . ." "Proof of motive in a prosecution for murder, although not essential, is always relevant, and evidence of other acts to prove motive is admissible under MRE 404(b)(1)." *People v Rice*, 235 Mich App 429, 440; 597 NW2d 843 (1999) (citation omitted).

> Although all relevant evidence is prejudicial, *People v Murphy* (*On Remand*), 282 Mich App 571, 582-583; 766 NW2d 303 (2009), the record does not establish that the evidence about defendant's drug dealing injected considerations extraneous to the merits of the case, such as

-10-

shock or bias, *Pickens*, 446 Mich at 337. The trial court instructed the jury on the record when Lee testified about the drug dealing that the evidence could only be considered for the limited permissible purposes under MRE 404(b), and that evidence of the drug dealing, itself, was not evidence that defendant committed the charged crimes. The admission of the other-acts evidence was not improper. Therefore, defendant cannot establish plain error affecting defendant's substantial rights related to the prosecutor's introduction of this evidence.

Defendant also argues that the prosecutor failed to provide proper notice under MRE 404(b)(2). However, even if the prosecutor plainly erred in this respect, defendant does not argue how the lack of notice affected his defense. As the prosecutor argued in response to defendant's motion for a new trial, defendant effectively had prior notice of the prosecutor's intent because he provided Lee's statement—about drug deals between defendant and Washington—to defendant during discovery. In addition, the prosecutor elicited similar testimony about defendant's drug dealing at the preliminary examination. Absent any evidence that the outcome of the proceeding would have been different but for the failure to file a formal notice of intent to present MRE 404(b) evidence at trial, defendant cannot establish that any notice error affected his substantial rights.

Finally, defendant claims that the prosecutor improperly elicited hearsay testimony from Lee that Washington may have set defendant up to get robbed for drugs and money. Defendant's argument blatantly misrepresents the record. Lee referenced a rumor about Washington setting defendant up in his August 2013 statement. However, evidence of this rumor was never introduced at trial. Instead, at trial, Lee testified that he did not know about any disagreement between defendant and Washington. Defendant's unsubstantiated claim of prosecutorial error therefore fails.

## IV. DEFENDANT'S STANDARD 4 BRIEF

Last, in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant argues that defense counsel should have objected to the identifications from the video footage by lay witnesses, who knew both Washington and defendant, but did not personally observe the events. He argues that their testimony was not admissible because the jury could watch and evaluate the video itself.

Under MRE 701, a lay witness's testimony is limited to opinions and inferences that are rationally based on the witness's perception and "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." A witness cannot provide his own opinions when the jury is equally capable of reaching a conclusion; this would invade the province of the jury. *Freed v Salas*, 286 Mich App 300, 346-347; 780 NW2d 844 (2009) (opinion of TALBOT, J.).

In *People v Fomby*, 300 Mich App 46, 50-51; 831 NW2d 887 (2013), this Court explained that in *United States v Begay*, 42 F3d 486, 502 (CA 9, 1994),

> an officer provided narrative testimony regarding an enhanced video of a demonstration involving about 200 demonstrators that resulted in violence. The officer magnified the videotape, reviewed more than 800 photographs taken

-11-

during the incident, copied portions of the videotape in slow motion, and enhanced its quality to help his identification of the individuals depicted. He then added circles and arrows to help the jury follow the defendants' movements. *Id*. The United States Court of Appeals for the Ninth Circuit determined that this was not expert testimony; it was lay witness opinion testimony.

Moreover, the officer's testimony in *Begay* was based on his own perceptions of the video itself after "extensive review." *Fomby*, 300 Mich App at 51. The "testimony likely helped the jury evaluate the videotape because it could reasonably be assumed that 'one viewing a videotape of a demonstration involving over 200 people would likely not see certain details, given the tremendous array of events all occurring simultaneously,' and the officer's testimony 'could help the jury discern correctly and efficiently the events depicted in the videotape.' " *Fomby*, 300 Mich App at 51-52, quoting *Begay*, 42 F3d at 503.

In *Fomby*, 300 Mich App at 49-52, this Court held that it was appropriate for a police officer to identify individuals among still photographs as the same individuals in a video. This Court found that the testimony was properly admitted as lay opinion testimony. *Id*. at 50. It was helpful to the jury because the officer reviewed six hours of video footage and created the stills from that footage; therefore, he was in the best position to identify the individuals as being the same as those in the video. *Id.* at 52-53. This Court noted that the officer did not identify the defendant and did not express an opinion regarding the defendant's guilt. *Id*. at 49, 53.

The *Fomby* Court cited the holding in *United States v Rodriguez-Adorno*, 695 F3d 32, 40 (CA 1, 2012), that testimony is inadmissible under the federal rules of evidence when the witness is in no better position than the jury to make an identification from a video or photograph. *Fomby*, 300 Mich App at 52-53. This Court essentially indicated that identifying a defendant from a video, at least where the witness is in no better position to do so than the jury, invades the province of the jury. See also *People v Perkins*, 314 Mich App 140, 161-162; 885 NW2d 900 (2016), superseded in part on other grounds sub nom *People v Hyatt*, ___ Mich App ___ (2016).

In this case, Christopher Duvall, David Lee, and Joanna Smith observed the video from the side of Rite Aid featuring the man with a red hat passing another man wearing black clothing, and then following him toward the alley behind the store. The witnesses identified the man with the red hat as Washington and the man wearing black as defendant.[3] The witnesses' testimony was rationally based on their perceptions because they personally watched the video with the officer in charge and again at trial. Their identifications were helpful to the jury. They were friends and acquaintances with Washington (now deceased) and defendant, and recognized them from neighborhood encounters. Christopher Duvall knew that the clothing they typically wore resembled the clothing worn by the men in the videos, Smith knew that the clothing defendant wore on August 5 matched the clothing worn by the man in black, and Lee recognized

---

[3] While Stacie Duvall also said that the man wearing black looked like defendant, her testimony was cumulative and was not particularly damaging because she said she did not see the same man in the courtroom.

defendant's build, walk, and clothing. As a result, the witnesses could make identifications from the video despite evidence that the video was blurry. Their personal knowledge allowed them to make a determination about the identity of the men in the video that the jury was not equally capable of making. Therefore, pertinent case law is distinguishable and the admission of the identifications was proper.

In addition, Lee and Smith observed the video of the man running in the alley, and they both identified him as defendant. The man's face was not visible in the video. Lee testified that he recognized that the way the man ran was the exact same way defendant runs. Smith again recognized defendant's clothing and observed that the man's bald head resembled defendant's head. Given Lee's and Smith's relationships with defendant, they had personal knowledge to make the identifications from the videos that the jury lacked. Therefore, the admission of their testimony about the identifications was proper. Because the lay testimony that defendant challenges was properly admitted, defendant cannot establish that defense counsel was ineffective for failing to object to it; any objection would have been futile. *Thomas*, 260 Mich App at 457.

Affirmed.


/s/ Henry William Saad
/s/ Patrick M. Meter
/s/ Christopher M. Murray