# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

EMMANUEL LEROY BROWN,

Defendant-Appellant.

UNPUBLISHED
February 21, 2017

No. 328737
Wayne Circuit Court
LC No. 14-010589-01-FC

Before: GLEICHER, P.J., and MURRAY and HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, after a jury trial, of first-degree felony murder, MCL 750.316(1)(b) (felony murder), and torture, MCL 750.85. The trial court sentenced defendant to life imprisonment for felony murder and 30 to 60 years' imprisonment for torture. We affirm.

## I. CONTINUANCE

Defendant argues that the trial court erred in proceeding to trial without giving him the opportunity to obtain certain evidence. Before trial, defendant filed a motion asking the court to order defendant's cellular telephone records be triangulated. The court granted the request to triangulate the cellular telephone records, and a court order was prepared and sent to defendant's cellular telephone providers. One set of phone records was returned to defendant. The second cellular telephone provider indicated it would comply with the court order to produce the records, but it could "sometimes . . . take a month, or so, to get the results back." Due to the delay, defendant requested a continuance. The trial court denied the motion and proceeded to trial without the phone records. This Court reviews a denial of a request for an adjournment or a continuance for an abuse of discretion. *People v Steele*, 283 Mich App 472, 484; 769 NW2d 256 (2009); *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003). '[A]n abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes.' " *People v Carnicom*, 272 Mich App 614, 617; 727 NW2d 399 (2006), quoting *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006).

" '[T]he desire of the trial courts to expedite court dockets is not a sufficient reason to deny an otherwise proper request for a continuance.' " *People v Jackson*, 467 Mich 272, 279; 650 NW2d 665 (2002), quoting *People v Williams*, 386 Mich 565, 577; 194 NW2d 337 (1972). However, "[n]o adjournments, continuances or delays of criminal causes shall be granted by any

court except for good cause shown . . . . ” MCL 768.2; see also *Coy*, 258 Mich App at 18, citing *Jackson*, 467 Mich at 276. MCR 2.503(C) permits the adjournment of criminal proceedings “because of the unavailability of a witness or evidence” if the request is made “as soon as possible after ascertaining the facts” and “only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence.” “Thus, to invoke the trial court’s discretion to grant a continuance or adjournment, a defendant must show both good cause and diligence.” *Coy*, 258 Mich App at 18-19, citing *People v Taylor*, 159 Mich App 468, 489; 406 NW2d 859 (1987). “ ‘Good cause’ factors include ‘whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments.’ ” *Id*., quoting *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992). However, “[e]ven with good cause and due diligence, the trial court’s denial of a request for an adjournment or continuance is not grounds for reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion.” *Id*.

While a close question, defendant demonstrated good cause and due diligence in seeking a continuance to obtain his cellular telephone records. With regard to the first consideration, defendant asserts that his constitutional right to present a complete defense was implicated because the trial court’s denial of his request for a continuance precluded him from “effectively undermin[ing] the testimony of [] Houston.” Second, defendant sought the continuance for the legitimate reason of attempting to secure evidence he alleged tended to establish his innocence. Third, while defendant was arguably guilty of negligence in attempting to obtain his cellular telephone records as he did not seek to produce the records until only two months before trial was set to begin, the cellular telephone provider ultimately caused the delay in producing the records. Last, defendant did request and receive other adjournments of the trial date. However, those adjournments were due to the prosecutor’s delay in getting defendant necessary DNA and fingerprint evidence.

However, a showing of good cause and due diligence does not require the trial court to grant the continuance request, but merely “invoke[s] the trial court’s discretion to grant a continuance or adjournment[.]” *Coy*, 258 Mich App at 18-19. The trial court did not articulate clearly the basis for its decision to deny a continuance. It did not discuss the requirements of the court rule or explain precisely how defendant failed to satisfy those requirements. Despite these failings, the trial court did make statements during the proceedings that seemed to form the basis for its decision when it indicated that the telephone records were not necessary or persuasive in establishing defendant’s innocence. Thus, while a close question, the trial court’s denial did not “fall[] outside the range of reasonable and principled outcomes[,]” and was not an abuse of its discretion. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Further, even assuming the denial of the continence was an abuse of discretion, given the overwhelming evidence of defendant’s guilt and defendant’s failure to substantiate his position on appeal that his cellular telephone records would have assisted or benefited his defense, defendant is unable to demonstrate that he was prejudiced by the trial court’s denial of a continuance.

## II. EXPERT WITNESS

Defendant argues the trial court erred in denying his request for the appointment of an expert in video analysis. A trial court’s ruling on a motion to appoint an expert witness is reviewed for an abuse of discretion. *People v Tanner*, 469 Mich 437, 442; 671 NW2d 728

(2003), citing MCL 775.15. " '[A]n abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes.' " *Carnicom*, 272 Mich App at 617, quoting *Woodard*, 476 Mich at 557.

Although defendant requested the court appoint an expert to testify regarding the quality of the gas station video footage, defense counsel stated the proposed expert would testify that defendant was not the male in the gas station video. The trial court denied the request "as presented," stating proposed identification testimony was "an improper use of that expert's testimony," as the credibility of witness identifications is for the jury to decide. Accordingly, while the trial court denied defendant's request for a video analysis expert to the extent the expert would testify regarding defendant's identity as the male in the video, the trial court concluded that it would permit defense counsel to procure a video analysis expert within the fee schedule if the video expert would "talk about the quality of the DVD." Thus, contrary to defendant's argument, the trial court granted defense counsel's request to appoint a video analysis expert but simply limited[1] the potential expert's testimony.

Even had the trial court denied defendant's request for the appointment of an expert in video analysis, it would not have been an abuse of discretion. MCL 775.15 provides the trial court with the discretion to appoint an expert witness upon an indigent defendant's request. "[T]o obtain appointment of an expert, an indigent defendant must demonstrate a 'nexus between the facts of the case and the need for an expert.' " *Tanner*, 469 Mich at 443, quoting *People v Jacobsen*, 448 Mich 639, 641; 532 NW2d 838 (1995). The defendant has the burden of showing that he "could not safely proceed to trial without" such expert assistance, and "[i]t is not enough for the defendant to show a mere possibility of assistance from the requested expert." *Tanner*, 469 Mich at 443.

Here, defendant failed to establish that an expert in video analysis was necessary for him to safely proceed to trial. MCL 775.15. First, the video footage was played for the jury numerous times during trial, giving the jury every opportunity to view the poor quality of the video. Further, through cross-examination, defense counsel challenged the strength and reliability of Rukia Cartwright's and Krystal Reimke's identification testimony by eliciting testimony regarding Cartwright's and Reimke's extensive drug use during the time they identified defendant, regarding their inability to see the male's full face in the gas station video, and questioned them regarding police pressure to identify defendant as the male in the gas station video. In closing argument, defense counsel also argued that Cartwright's and Reimke's identifications of defendant should not be believed. Given defense counsel's cross-examination

---

[1] Limiting the potential expert testimony in this manner was also not error. When a witness is not in a better position than the jury to make an identification from a video, opinion testimony identifying a person in a video as the defendant is generally inadmissible as infringing on the jury's role in deciding the defendant's guilt. *People v Fomby*, 300 Mich App 46, 52; 831 NW2d 887 (2013) and *People v Perkins*, 314 Mich App 140, 161-162; 885 NW2d 900 (2016), superseded in part on other grounds sub nom *People v Hyatt*, ___ Mich App ___; ___ NW2d___ (2016) (Docket No. 325741).

and thorough challenge to the identifications, defendant cannot show that an expert in video analysis was necessary for him to safely proceed to trial.

## III.   SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution failed to present legally sufficient evidence to support his conviction for torture.  A court must "review a challenge to the sufficiency of the evidence de novo and in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proved beyond a reasonable doubt."  *People v Sherman-Huffman*, 241 Mich App 264, 265; 615 NW2d 776 (2000), aff'd 466 Mich 39 (2002).  "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the . . . verdict."  *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

In a criminal case, a prosecutor must introduce evidence sufficient to justify a trier of fact in concluding that the defendant is guilty beyond a reasonable doubt.  *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999); *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010).  A prosecutor need not negate every reasonable theory of innocence, but must only prove her own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant provides.  *Nowack*, 462 Mich at 400; *People v Chapo*, 283 Mich App 360, 363-364; 770 NW2d 68 (2009).  Questions of credibility should be left to the trier of fact to resolve. *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009); *Unger*, 278 Mich App at 229. All conflicts in the evidence must be resolved in favor of the prosecution.  *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

It is well-settled that, "because it can be difficult to prove a defendant's state of mind on issues such as . . . intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented."  *Kanaan*, 278 Mich App at 622.  Further, intent may be inferred from "any facts in evidence, including the nature, extent, and location of these wounds."  *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010).

The Michigan torture statute provides, in relevant part:

(1) A person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture and is guilty of a felony punishable by imprisonment for life or any term of years.

(2) As used in this section:

(a) "Cruel" means brutal, inhuman, sadistic, or that which torments.

* * *

(c) "Great bodily injury" means either of the following:

(*i*) Serious impairment of a body function as that term is defined in section 58c of the Michigan vehicle code, 1949 PA 300, MCL 257.58c.

(*ii*) One or more of the following conditions: internal injury, poisoning, serious burns or scalding, severe cuts, or multiple puncture wounds

(3) Proof that a victim suffered pain is not an element of the crime under this section. [MCL 750.85(1).]

Thus, to prove torture, the prosecutor needed to establish beyond a reasonable doubt that (1) defendant intended to cause cruel or extreme physical or mental pain and suffering, (2) defendant inflicted great bodily injury or severe mental pain or suffering, and (3) the victim, Andre Buchanan, was within defendant's custody or physical control. MCL 750.85; see also *People v Schaw*, 288 Mich App 231, 233-234; 791 NW2d 743 (2010).

The evidence at trial was sufficient to prove that it was defendant who caused Buchanan's injuries and that defendant intended to cause cruel or extreme physical pain and suffering when he did so. Ashleigh Houston identified defendant as the person who hit Buchanan in the head with both a monkey wrench and BB gun and set his body on fire. Cartwright and Reimke also identified defendant in the gas station video buying the gas used to ignite Buchanan's body, and independent physical evidence further corroborated Houston's version of events. Even assuming defendant set Buchanan's body on fire to "disguise the incident and prevent any possible identification"—rather than to inflict cruel or extreme physical pain and suffering as defendant asserts—defendant's actions in binding Buchanan before hitting him in the head until his skull fractured demonstrate that he intended to cause Buchanan cruel or extreme physical pain and suffering.

Further, the evidence presented at trial was sufficient to establish that defendant inflicted great bodily injury on Buchanan while Buchanan was within defendant's custody or physical control. The evidence established that Buchanan suffered fourth degree burns over almost his entire body. Even if Buchanan only lived for a short period of time after he was set on fire, the burns that he suffered while alive would be sufficient to enable the jury to find that Buchanan's injuries qualified as "great bodily injury" within the meaning of MCL 750.85(2)(c)(*ii*). However, even assuming that Buchanan did not live long enough after the fire was lit to sustain burns, the medical evidence was sufficient to establish that Buchanan suffered great bodily injury caused by defendant, as defendant inflicted at least seven blows to Buchanan's head that were so severe that they caused multiple skull fractures that resulted in much of his brain matter eviscerating from his skull. That evidence was alone sufficient to enable the jury to find that Buchanan's injuries qualified as "great bodily injury" within the meaning of MCL 750.85(2)(c)(*i*).[2] Accordingly, viewed in a light most favorable to the prosecution, the evidence supported an inference that defendant caused great bodily injury to Buchanan with an intent to cause him cruel or physical pain and suffering.

---

[2] MCL 257.58c's definition of "Serious impairment of a body function" includes, "(h) A skull fracture or other serious bone fracture."

Defendant argues that he is entitled to a new trial because unduly suggestive identification procedures led to his arrest and convictions.  On appeal, "[t]he trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous." *People v Harris*, 261 Mich App 44, 51; 680 NW2d 17 (2004).  "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made."  *Id*. Constitutional issues and questions of law relevant to a motion to suppress are reviewed de novo. *People v Hickman*, 470 Mich 602, 605; 684 NW2d 267 (2004).

Defendant argued that his arrest was the result of an unduly suggestive identification procedure as early as his preliminary examination and eventually requested a *Wade*[3] hearing on the matter.  A *Wade* hearing was conducted in relation to both Cartwright's and Reimke's identification of defendant in the gas station video.  Both witnesses indicated they identified defendant as the male in the video when the police showed them the video only a few days after the murder.  Reimke also testified that the police never distrusted her identification or urged her to look again and that the police never suggested the man in the video was defendant.  The trial court concluded that, "[t]here is nothing on this record to indicate that the police did anything suggestive; that they pointed to the defendant or that they suggested it was the defendant," and therefore it was "more than satisfied that there was nothing wrongful done by the police," and thus, the identifications were not suggestive.

On appeal, defendant again argues that the pretrial identification procedure was unduly suggestive, rendering Cartwright and Reimke's identifications unreliable.  "An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001).  Where a judicial inquiry into the reliability of an eyewitness identification is appropriate, the defendant bears the burden of showing that the identification procedure was so impermissibly suggestive that it led to a "substantial likelihood of misidentification." *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993); *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002).  Factors that a court should consider to determine the "likelihood of misidentification" include

> "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." [*Kurylczyk*, 443 Mich at 306, quoting *Neil v Biggers*, 409 US 188, 199-200; 93 S Ct 375; 34 L Ed 2d 401 (1972).]

There is nothing in the record to suggest a substantial likelihood of misidentification. The lower court record reveals that Cartwright and Reimke were clear and certain in their identifications of defendant as the man buying the gas in the video.  Both witnesses knew

---

[3] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

defendant for a period of time before the incident, and while they both admitted to initially believing Buchanan was the man in the video, they also both had detailed and specific reasons for ultimately identifying defendant as the man in the video, including defendant's walk, mannerisms, and manner of dress. Neither witness suggested that police interfered with, or made any suggestions regarding, the identification. Under these circumstances, defendant's contention that there was a substantial likelihood of misidentification is without merit. Thus, the trial court properly denied defendant's pretrial request to suppress the identifications.

Defendant argues he was denied his right to be tried by a fair and impartial jury when a juror lied during voir dire. However, defendant fails to indicate what "false answers" a juror provided during jury selection and does not elaborate on how the juror's untruthfulness prejudiced him at trial. A defendant may not simply "announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (quotation marks and citation omitted). An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue. *Harris*, 261 Mich App at 50. Accordingly, defendant abandoned this issue.

Defendant also argues that he was denied the effective assistance of counsel when defense counsel failed to investigate Buchanan's cause of death and failed to obtain medical records related to Buchanan's head injury. Generally, "[a] claim of ineffective assistance of counsel is a mixed question of law and fact." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*. However, because defendant's motion was denied, *People v Brown*, unpublished order of the Court of Appeals, entered August 31, 2016 (Docket No. 328737), and no *Ginther*[4] hearing was held, review "is limited to mistakes apparent on the record." *Payne*, 285 Mich App at 188.

The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 US at 694. Effective assistance of counsel is presumed, and the defendant bears a substantial burden of proving otherwise. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). A defendant can overcome the presumption by showing that counsel failed to perform an essential

---

[4] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

duty and that failure was prejudicial to the defendant. *People v Reinhardt*, 167 Mich App 584, 591; 423 NW2d 275 (1988), remanded on other grounds 436 Mich 866 (1990).

Defendant's allegations regarding defense counsel's failure to investigate Buchanan's cause of death are inconsistent with the record. Contrary to defendant's arguments, the record indicates that defense counsel investigated Buchanan's cause of death, obtained Buchanan's autopsy report and related documents containing information related to his head injury, and presented the potential inconsistency regarding the cause of death determination to the jury during cross-examination of several witnesses and during closing argument. Accordingly, defendant has failed to show that defense counsel failed to investigate Buchanan's cause of death and, therefore, failed to establish that defense counsel's performance fell below an objective standard of reasonableness.

Last, defendant argues the prosecutor committed misconduct[5] when he (1) failed to disclose all of Buchanan's medical records and all DNA evidence related to his death, (2) vouched for the credibility of a witness, (3) permitted a witness for the prosecution to give false testimony, and (4) made improper statements in his closing argument. To preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). A curative instruction is usually sufficient to cure the prejudicial effect of an inappropriate prosecutorial comment. *People v Cain*, 299 Mich App 27, 36; 829 NW2d 37 (2012), vacated in part on other grounds by 495 Mich 874 (2013). Thus, if defense counsel failed to object, review is foreclosed unless the prejudicial effect of the remark was so great that it could not have been cured by an appropriate instruction. *People v Williams*, 265 Mich App 68, 70-71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006). Here, defense counsel did not object to any of the instances of misconduct asserted by defendant or make a request for a curative instruction. Thus, this issue is not preserved for appeal.

When there was no contemporaneous objection and request for a curative instruction, appellate review of claims of prosecutorial misconduct is limited to ascertaining whether there was plain error that affected substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). Reversal is warranted only when plain error resulted in the conviction of an innocent person, or seriously affected the fairness, integrity, or public reputation of the proceedings. *Unger*, 278 Mich App at 235.

---

[5] In *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), this Court explained that the term "prosecutor misconduct" is more appropriately applied in the rare instance where the prosecutor's behavior violates the law or the rules of professional conduct, and the term "prosecutorial error" is more appropriately applied to claims of conduct that amount to a technical or inadvertent error. Regardless of the term used, these claims are evaluated to determine whether the errors during the course of trial deprived the defendant of a fair and impartial trial. *Id*. at 88. Here, defendant's allegations would fall under both terms, as he has alleged misconduct relative to withholding evidence and allowing perjured testimony.

Defendant fails to indicate what witnesses' credibility the prosecutor vouched for, what false testimony the prosecutor permitted a witness to give, and what remarks in the prosecutor's closing statement were improper. Due to the lack of elaboration in Defendant's Standard 4 Brief on Appeal it is impossible to discern what specifically defendant claims constituted the alleged misconduct. A defendant may not simply "announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Kevorkian*, 248 Mich App at 389 (quotation marks and citation omitted). Defendant has abandoned these claims by failing to provide a factual or legal basis for his arguments. *Harris*, 261 Mich App at 50.

The record does not support defendant's remaining claim that the prosecutor failed to disclose all of Buchanan's medical records and all DNA evidence related to his death. The trial court adjourned defendant's preliminary examination until he was provided with the medical examiner's report regarding Buchanan's death. Further, on February 9, 2015, defendant filed a motion for specific discovery, asking the court to "compel the delivery" of any fingerprint evidence related to Buchanan and the "forensic information" related to the DNA swab taken from defendant for comparison. At a February 18, 2015 motion hearing, the court indicated that the DNA results had not been produced, so adjourned the March 3, 2015 trial date. Although it took several months and several court orders, defense counsel was eventually provided with the fingerprint and DNA evidence before trial. Accordingly, defendant has not shown plain error affecting substantial rights.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Christopher M. Murray
/s/ Karen M. Fort Hood