Per Curiam.
This case concerns when, under MCL 775.15, a defendant is entitled to have expert assistance appointed at public expense in a criminal proceeding. Defendant sought expert assistance regarding deoxyribonucleic acid (dna) and serology evidence, even though the DNA evidence excluded defendant and the serology evidence suggested only that defendant was one of 2.9 million people who could have been the source of the blood found at the crime scene. Further, defendant failed to give any specific reason why this expert assistance was necessary. The trial court refused defendant’s request, rul *439 ing that the appointment of an expert was not necessary for defendant to safely proceed to trial. The Court of Appeals reversed defendant’s conviction on the ground that she could not have safely proceeded to trial without expert assistance.[1] We agree with the trial court; therefore, we reverse the decision of the Court of Appeals and remand this case to the circuit court for reinstatement of defendant’s conviction and sentence.
I. FACTS
A. THE DNA AND SEROLOGICAL EVIDENCE
In the early hours of March 22, 1995, bartender Sharon Watson was stabbed to death during a robbery at a bar. Hattie Mae Tanner first became a suspect in the case when the police learned that she spent the evening with a man who was one of the last people to see the victim alive.
When questioned by the police, defendant implicated herself. She admitted that a knife found at the bar “look[ed] like one of [her] knives” because of its unique characteristics. She also explained that her fingerprints would be on the knife because she had handled it three or four weeks before the homicide. Also, defendant admitted that she was on the bar premises that evening.
The physical evidence collected from the bar included the knife, a bloodstained napkin, a diluted bloodstain on the sink directly behind the bar, a bloodstained cloth, and, on the victim’s shirt, six *440 bloodstains. The prosecutor arranged for dna and serological analyses of this evidence.
The dna evidence excluded defendant.[2] Some evidence that could not be tested for dna was subjected to serological testing for both blood type and phosphoglucomutase (pgm), an enzyme found in human blood.[3] This testing established that the diluted bloodstain found on the bar sink was of the same blood type and PGM subtype as defendant’s blood. The prosecution’s expert clarified, however, that a comparison of the two blood profiles did not confirm that the blood was defendant’s. Rather, the evidence established that defendant and about four percent of the African-American population have the same blood profile. The prosecution’s serology expert testified that African-Americans constituted twenty-six percent of the United States population of 280 million people, and that “[p]ossibly millions” would have the same blood type and PGM subtype as defendant.[4]
B. CIRCUIT COURT PROCEEDINGS
Defendant filed a pretrial motion under MCL 775.15 for expert assistance in dna and blood typing. This statute authorizes payment for an expert witness, provided that an indigent defendant is able to show “that *441 there is a material witness in his favor within the jurisdiction of the court, without whose testimony he cannot safely proceed to a trial. Id. Hi the defendant makes this showing, the judge “in his discretion” may grant funds for the retention of an expert witness. Id.
At the hearing, defense counsel informed the trial court that he did not want to retain an expert to reanalyze the blood samples or repeat the testing conducted by the prosecution’s experts. He stated that he wanted an expert to help him better understand the dna evidence and possibly to testify at trial. After the prosecution pointed out that the DNA evidence was exculpatory, defense counsel asked for money to “consult the DNA expert, and then based on that consultation if I can persuade you that some money should be kicked in for him to testify then we can revisit that area . . . .” The trial court denied the request.
The case proceeded to trial. The jury found defendant guilty of second-degree murder, felony murder, and armed robbery. The trial court sentenced defendant to life imprisonment for felony murder and vacated the other two convictions.
C. THE COURT OF APPEALS DECISION
Defendant appealed to the Court of Appeals, which vacated her conviction and remanded the case for retrial. The Court concluded that the “trial court erred in depriving defendant of expert assistance in the areas of dna and serology because she could not otherwise proceed safely to trial without such assistance.” 255 Mich App 404. It characterized the role of *442 dna and serology evidence in the case as “critical.” Id. at 405. A dna expert was needed so that defendant could “develop and argue the point that the dna evidence exculpated her.” Id. at 405-406. A serology expert was needed so that defendant could “defend herself against the effect” of the serology evidence, or “diminish its force by explaining that it constituted an anomalous test result.” Id. at 406.
Further, the Court held that, without this expert assistance, defendant received a fundamentally unfair trial. Because it could not say that the error was harmless beyond a reasonable doubt, it reversed defendant’s conviction and remanded for a new trial. The dissent stated that defendant had not shown that “the absence of an expert jeopardized her ability to prepare a defense,” id. at 425, and that, therefore, the trial court’s denial of defendant’s motion did not result in a fundamentally unfair trial.
The prosecutor sought leave to appeal to this Court.
II. STANDARD OF REVIEW
This Court reviews a trial court’s decision whether to grant an indigent defendant’s motion for the appointment of an expert for an abuse of discretion. MCL 775.15. “A mere difference in judicial opinion does not establish an abuse of discretion.” People v Cress, 468 Mich 678, 691; 664 NW2d 174 (2003).
III. DISCUSSION
As MCL 775.15 makes clear, a trial court is not compelled to provide funds for the appointment of an expert on demand. In People v Jacobsen, 448 Mich *443 639, 641; 532 NW2d 838 (1995), this Court held that, to obtain appointment of an expert, an indigent defendant must demonstrate a “ ‘nexus between the facts of the case and the need for an expert.’ ” (Citation omitted.) It is not enough for the defendant to show a mere possibility of assistance from the requested expert. “Without an indication that expert testimony would likely benefit the defense,” a trial court does not abuse its discretion in denying a defendant’s motion for appointment of an expert witness. Id.
Because defendant failed to show a nexus between the facts of this case and the need for an expert, we hold that the trial court did not abuse its discretion in denying the motion. As the trial court recognized, the prosecutor’s dna experts testified that the blood in the bar and on the victim’s shirt was not defendant’s. The dna evidence was entirely exculpatory. In fact, DNA analysis not only eliminated the possibility that the blood on the victim’s shirt belonged to either defendant or the victim, it established that the blood belonged to an unidentified female. This favored defendant’s assertion that she was not Watson’s killer. Under these circumstances, defendant cannot show that she could not safely proceed to trial without a dna expert.
Nor did defendant establish the need for appointment of an expert serologist. The serology evidence did link defendant to the crime scene in a general sense, by establishing that the diluted bloodstain by the sink was left by one of possibly millions of persons who shared defendant’s blood type and PGM subtype. But we agree with the Court of Appeals dissent that defendant did not establish that an expert serologist would offer testimony that would “likely benefit *444 the defense,” as is required by the statute. Jacobsen, supra at 641.
As the dissent stated, defendant did not seek to have the serology testing repeated. Nor did defendant argue that a serology expert might refute the conclusion that the blood found by the sink had the same blood profile as defendant’s blood. At best, defendant has raised only the mere possibility that the appointment of a dna and serology expert might have provided some unidentified assistance to the defense. This falls short of satisfying defendant’s burden of showing that she could not safely proceed to trial without such expert assistance. We hold that the trial court did not abuse its discretion in denying defendant’s motion.[5]
IV. CONCLUSION
Because defendant failed to establish a nexus between the facts of the case and the need for a dna and serology expert, the Court of Appeals erred when it held that defendant could not proceed safely to trial without one. The trial court did not abuse its discretion in ruling that defendant was not entitled to such assistance under MCL 775.15. Accordingly, we reverse the decision of the Court of Appeals and remand to the trial court for reinstatement of defendant’s felony-murder conviction and sentence.[6] MCR 7.302(G)(1).
*445 Corrigan, C.J., and Cavanagh, Weaver, Taylor, Young, and Markman, JJ., concurred.

 255 Mich App 369; 660 NW2d 746 (2003).

 Dna analysis of the blood on the knife and the napkin established a match with the victim’s dna profile; none of this blood matched defendant’s dna profile. Testing of the bloodstains on the victim’s shirt revealed that the blood did not match the dna profile of either the victim or defendant. These bloodstains, which originated from only one person, were attributable to an unknown female.

 There are four blood types, A, B, AB, and O, and there are ten PGM subtypes.

 A calculation using these numbers indicates that slightly more than 2.9 million African-Americans share defendant’s type and PGM subtype.

 For the same reason, the trial court did not abuse its discretion in denying appellate counsel’s subsequent motion for the appointment of a serology expert.

 Our holding renders moot the Court of Appeals directive that, on retrial, the prosecution may not charge defendant with felony murder under an aiding and abetting theory. Our review of the record confirms that, when the evidence is viewed in a light most favorable to the prosecution, the case was properly submitted to the jury on both theories of *445 felony murder because a reasonable juror could find the essential elements of the crime proved beyond a reasonable doubt. People v Riley, 468 Mich 135, 139; 659 NW2d 611 (2003). We note that circumstantial evidence and reasonable inferences may be sufficient to prove the elements of a crime. People v Jolly, 442 Mich 458, 466; 502 NW2d 177 (1993).