# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

EARL ROBERT KRANZ,

Defendant-Appellant.

UNPUBLISHED
June 12, 2018

No. 335416
Allegan Circuit Court
LC No. 10-016625-FC

Before: MURRAY, C.J., and MARKEY and TUKEL, JJ.

PER CURIAM.

Defendant, Robert Earl Kranz, appeals by right his jury trial convictions of six counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (person under 13); one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (person under 13); and one count of aggravated indecent exposure, MCL 750.335a(2)(b). The trial court sentenced defendant to 25 to 40 years' imprisonment for each of the six CSC-I convictions, 54 months to 15 years' imprisonment for the CSC-II conviction, and 8 months and 15 days incarceration for the aggravated indecent exposure conviction. We affirm.

This appeal arises from defendant's retrial on charges related to the sexual abuse he perpetrated against the victim when she was between the ages of 10 and 11 years old. At trial, the victim testified in detail about the sexual abuse that defendant perpetrated against her on a nearly daily basis from 2008 to 2009. The victim testified that the sexual abuse occurred at defendant's home, at a local health clinic in Exam Room 1, and at another location in an office. During the police investigation, the victim identified places in Exam Room 1 that possibly contained evidence. Police cut strips of the carpeting out of the room, and expert testimony established that the some of the carpeting strips contained seminal fluid and sperm cells, and that defendant's DNA matched the DNA profile of the sperm cells. Defendant testified at trial and denied abusing the victim. Both defendant and his former wife testified that they had sexual relations in Exam Room 1 during the time that the victim claimed that she was abused.

On appeal, defendant argues that the trial court abused its discretion when it excluded testimony concerning the hostility that the victim's step-sibling JL had against defendant. Defendant argues that JL and the victim had a close relationship and that evidence of JL's hostility toward defendant would have advanced the defense theory that the victim fabricated the allegations against defendant. We disagree.

-1-

We review a trial court's evidentiary rulings for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo . . . ." *Id*. Necessarily, a trial court abuses its discretion when it admits evidence that is inadmissible as a matter of law. *Id*.

At trial, the victim's brother JK testified that on one evening in November 2009, the victim disclosed to him that defendant sexually abused her. JK testified that the victim then went across the hall into another room and disclosed the abuse to JL. According to JK, JL ran downstairs and became involved in a scuffle with defendant. During his testimony, defense counsel asked JK, "At this time in your life from what you recall, is it safe to say that [JL] hated [defendant]?" The prosecution objected, and the trial court upheld the objection on relevance grounds.

During defendant's testimony, defense counsel asked defendant if JL had recently come to live at the home when the victim disclosed the abuse, and she asked defendant whether JL previously lived elsewhere. Defense counsel articulated the rationale for the questioning as follows:

> Your Honor all we intended to offer for the jury is to ask Mr. Kranz if he had objected to having [JL] move back into the home at that time. And, we believe that all he would have said is yes, he objected, they did not get along. That's all the further I intended to take it your Honor.
>
> * * *
>
> It's relevant because our theory of this case is that a story was made up on that evening in November by [the victim], [JL] had only been back in the house perhaps two weeks when that trouble started. Now we believe the jury can take from it what it wants to from that, they can choose to believe that it had something to do with it or not, but we believe that was more properly for the jury.

The trial court excluded the proposed testimony, explaining as follows:

> I thought that the line of questioning with [defense counsel] suggested [sic] might inevitably bring [JL] in here as a rebuttal witness and that would open the door to reasons why she might have a difficult relationship with [defendant], and that would open the door to the prior bad acts testimony that the prosecutor decided well in advance of this trial she would not be eliciting, and that would then complicate the proofs considerably.
>
> So, I fundamentally ruled that that line of questioning [defense counsel] was suggesting was irrelevant and wouldn't be allowed. So, if anybody wants to supplement the record with their own statements you're welcome to do so.

On appeal, defendant argues that the trial court abused its discretion in excluding the testimony of JK and defendant. Defendant argues that the evidence was relevant and tended to

show that JL had animosity toward defendant, which, in turn, was relevant to show that the victim was motivated to fabricate allegations against defendant. This argument lacks merit.

MRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Even if evidence is relevant under MRE 401, MRE 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In this case, JK's testimony that JL hated defendant was not admissible under MRE 401. Evidence that JL hated defendant would not have had any tendency "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Evidence that JL allegedly hated defendant did not tend to show that the victim fabricated allegations against defendant. There was no evidence to show how JL's hatred would motivate the victim to make false allegations about sexual abuse that defendant perpetrated upon her. While defendant argues that the evidence would have been relevant to prove that the victim fabricated the allegations, defendant fails to show a nexus between JL's alleged hatred and the victim's alleged fabrication. There was no evidence to connect JL's alleged state of mind to the victim. Defendant did not call JL as a witness; therefore, the evidence was not admissible for impeachment purposes.

Moreover, there was no evidence to show that there was a foundation for JK's testimony. At trial, defendant argued that JK's testimony was admissible opinion testimony under MRE 701, which provides as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

In this case, defendant fails to articulate how JK's opinion that JL hated defendant was "rationally based on the perception of the witness." There was nothing in the record and defendant did not make an offer of proof to support that JK had a rational basis for testifying as to the mental state of another non-testifying witness. Thus, JK's proffered testimony would not have been helpful to a clear understanding of his testimony or to the determination of a fact in issue at trial. See MRE 701.

Moreover, even assuming arguendo that JK's testimony was relevant, we note that the trial court could have held that the evidence was inadmissible under MRE 403. Specifically, if JK testified to JL's state of mind toward defendant, this would have opened the door to questions about JL's past allegations of abuse against defendant. This other-acts evidence was not admitted in this trial, so the trial court had reason to take precaution to prevent the jury from learning of the evidence. Specifically, whether JK had a rational perception of JL's feelings toward defendant naturally would have raised the question of why JL hated defendant. Inquiring into why JL hated defendant would have potentially led to other-acts evidence being disclosed to

the jury. Therefore, the trial court could have concluded that the probative value of JK's testimony was "substantially outweighed by the danger of unfair prejudice, [or] confusion of the issues." MRE 403. Thus, the trial court could have excluded the evidence under MRE 403. See *People v Lyon*, 227 Mich App 599, 612-613; 577 NW2d 124 (1998) ("This Court will affirm a lower court's ruling when the court reaches the right result, albeit for the wrong reason.").

Similarly, the trial court did not err in excluding defendant's proffered testimony that he did not want JL to move back into the family home. This testimony would have shown that defendant and JL did not get along. However, as discussed above, there was no correlation between defendant's poor relationship with JL and the victim. There was nothing in the record to show a nexus between the victim and the animosity that JL had toward defendant. JL was not a witness at trial, and there was no other evidence or offer of proof to connect the victim's allegations to JL's animosity. Thus, the evidence was not relevant under MRE 401.

Moreover, assuming that the evidence was relevant, defendant's testimony would have opened the door to questions about defendant's relationship with JL, which in turn, may have exposed the jury to inadmissible other-acts evidence. The prosecution did not introduce the other-acts evidence in this case, and JL did not testify at trial. The trial court could have concluded that allowing defendant to testify about his poor relationship with JL would open a line of questioning that led to reference of the other-acts evidence. Thus, the trial court could have concluded that the probative value of defendant's testimony was substantially outweighed by the danger of unfair prejudice or confusion of the issues under MRE 403. In short, the trial court did not abuse its discretion in excluding defendant's testimony.

Next, defendant argues that the trial court abused its discretion when it denied his pretrial motion for public funds to procure experts for his defense. We disagree.

"This Court reviews a trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert for an abuse of discretion." *People v Tanner*, 469 Mich 437, 442; 671 NW2d 728 (2003). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). "A trial court necessarily abuses its discretion when it makes an error of law." *Id.* at 723. Additionally, "[t]his Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense." *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009).

On May 20, 2016, defense counsel moved for public funding for expert witnesses Dr. Andrew Barclay, Ph.D., and Dr. Julie Howenstine, D.V.M.[1] Defense counsel indicated that Dr. Barclay would testify about delayed disclosure, forensic interviewing, and memory in child sexual abuse cases. Dr. Howenstine would testify to DNA methods and procedures used by the police in this case. At a motion hearing, the trial court agreed to provide funding for five hours of preliminary investigation on the case for each of the experts in the amount of $88 per hour.

---

[1] Defense counsel initially requested funding for an unnamed third witness, but ultimately abandoned that request at a motion hearing.

On June 23, 2016, the trial court held another motion hearing regarding defendant's request for expert witnesses. At that hearing, defense counsel indicated that both Dr. Barclay and Dr. Howenstein declined the offer to conduct five hours of investigative research on the case at the proposed $88 per hour. Defense counsel indicated that she did not need Dr. Howenstein to proceed to trial. When the trial court questioned defense counsel regarding why defendant could not safely proceed to trial without the testimony of Dr. Barclay, defense counsel responded:

> Your Honor, I cannot tell you that I don't feel that we can safely proceed, I think it would assist the triers of fact but at this point I'm not afraid to proceed and don't feel that [defendant] should be afraid to proceed to trial without his testimony.

> * * *

> Your Honor . . . I'm not going to misrepresent to you that I do not feel that we can safely go to trial without someone like Doctor Barclay. I'm not going to tell you that, however, I think it would [be] enormously helpful for us, we had the court had in the previous trial . . . [an expert for the prosecution] testify and I believe the focus of the testimony was on delayed disclosure if I'm not . . . mistaken of children in the sexual abuse cases.

Following oral arguments and extensive inquiry by the trial court, the court denied defendant's request for funding, reasoning in part, that defendant failed to show that he could not safely proceed to trial without the proposed expert witnesses.

On appeal, defendant argues that the trial court abused its discretion in denying his motion and denied him due process and the right to present a defense. We disagree.

MCL 775.15 "authorizes payment for an expert witness, provided that an indigent defendant is able to show 'that there is a material witness in his favor within the jurisdiction of the court, without whose testimony he cannot safely proceed to trial . . . .' " *People v Carnicom*, 272 Mich App 614, 617; 727 NW2d 399 (2006), quoting MCL 775.15. "[T]o obtain appointment of an expert, an indigent defendant must demonstrate a nexus between the facts of the case and the need for an expert." *Tanner*, 469 Mich at 443 (quotation marks omitted). "It is not enough for the defendant to show a mere possibility of assistance from the requested expert." *Id*. "Without an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness." *Id*. (quotation marks and citation omitted).

In this case, the trial court did not abuse its discretion in denying public funding for Dr. Howenstine. Defendant did not show a nexus between the facts of this case and the need for Dr. Howenstine's testimony. See *Carnicom*, 272 Mich App at 619. Defense counsel indicated that Dr. Howenstine could potentially offer testimony about the methods that police used in procuring DNA samples; however, defendant did not show how this testimony would benefit the defense. There was no indication that Dr. Howenstine would have testified to errors in the police methodology. Indeed, defendant's trial strategy was to admit that his DNA was in Exam Room 1 because he previously had sex with his former wife in that room. Thus, defendant fails to

indicate why Dr. Howenstine's testimony was necessary to his defense at trial. Moreover, at the June 23, 2016 hearing, defense counsel agreed that defendant could safely proceed to trial without Dr. Howenstine's testimony. In short, the trial court did not abuse its discretion in denying public funding for Dr. Howenstine.

Similarly, the trial court did not abuse its discretion in denying defendant's request for funding for Dr. Barclay. Defendant indicated that Dr. Barclay would testify about forensic interviews, disclosure process, and memory regarding child sexual abuse. However, defendant did not make any offer of proof to show that Dr. Barclay's testimony would be favorable to the defense such that defendant could not safely proceed to trial without the testimony. Instead, defense counsel showed a "mere possibility" that Dr. Barclay's testimony would benefit defendant, which was insufficient to obtain funding under MCL 775.15. See *Tanner*, 496 Mich at 443. Indeed, defense counsel agreed at the June 23, 2016 hearing that defendant could safely proceed to trial without Dr. Barclay's testimony. Furthermore, it was not clear how Dr. Barclay's testimony would have benefited defendant such that he could not safely proceed to trial. For example, defense counsel indicated that Dr. Barclay could testify about forensic interviews and "created memory," but this would not have addressed the evidence that the victim disclosed the abuse outside a forensic setting. In this case, similar to *Carnicom*, 272 Mich App at 618, defendant "did not make any indication or offer any evidence that expert testimony would likely benefit him." Instead, defendant showed a mere possibility that Dr. Barclay's testimony would benefit the defense. Therefore, the trial court did not abuse its discretion in denying defendant's request for funds for procuring Dr. Barclay as an expert.

In sum, the trial court did not abuse its discretion in denying defendant's motion for funding for the appointment of experts for his defense. Therefore, the trial court did not deny defendant due process or his right to present a defense. "It is well settled that the right to assert a defense may permissibly be limited by 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *People v Toma*, 462 Mich 281, 294; 613 NW2d 694 (2000), quoting *Chambers v Mississippi*, 410 U S 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973).

We affirm.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Jonathan Tukel