*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 3, 2020

Plaintiff-Appellee,

v

No. 323741
Wayne County Circuit Court
LC No. 14-001748-FC

JOHNNY RAY KENNEDY,

Defendant-Appellant.

## ON REMAND

Before: MURRAY, C.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

On remand, our Supreme Court directed this Court to reconsider whether defendant's claim of error concerning his request for a DNA expert constitutes error that is harmless beyond a reasonable doubt. *People v Anderson (After Remand)*, 446 Mich 392, 405-406; 521 NW2d 538 (1994). We reverse and remand for a new trial consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 17, 1993, a dead body was discovered in the basement of an abandoned office building in Detroit. The body was identified as Tanya Harris, and the medical examiner determined that she died by strangulation. After an investigation, the police had no leads as to who murdered Harris. In 2011, while "working on cold cases," the Detroit Police Department sent a vaginal and rectal swab taken from Harris to the Michigan State Police Crime Lab for DNA testing. After testing, it was determined that the swabs contained DNA from Harris "as well as an additional donor that was determined to be male." When the male DNA was run through the

"CODIS System,"[1] it produced a match with defendant. As a result, on December 12, 2013, defendant was charged with open murder for the death of Harris. He was convicted as charged.

His conviction was affirmed, *People v Kennedy*, unpublished per curiam opinion of the Court of Appeals, issued July 26, 2016 (Docket No. 323741) (*Kennedy I*) (Judges MURRAY, P.J., and RIORDAN, with Judge STEPHENS dissenting). Defendant sought leave to appeal in our Supreme Court. After holding oral arguments on the application for leave to appeal, the Supreme Court issued an opinion on the application, overruling *People v Jacobsen*, 448 Mich 639; 532 NW2d 838 (1995), and *People v Tanner*, 469 Mich 437; 671 NW2d 728 (2003), "to the extent that they h[e]ld or suggest[ed]" that an indigent defendant's request for the appointment of an expert at state expense is governed by MCL 775.15. *People v Kennedy*, 502 Mich 206, 225; 917 NW2d 355 (2018) (*Kennedy II*). Given that the majority in this Court had relied on the now overruled holding in *Tanner*, the Supreme Court vacated *Kennedy I* and remanded with instructions for this Court to reexamine defendant's claim of error concerning his request for a DNA expert by applying the due process analysis set forth in *Ake v Oklahoma*, 470 US 68; 105 S Ct 1087; 84 L Ed 2d 53 (1985), utilizing the "reasonable probability" standard announced in *Moore v Kemp*, 809 F2d 702 (CA 11, 1987). *Kennedy II*, 502 Mich at 227-228. After reexamining the matter according to the Supreme Court's instructions, a majority of this panel held that although "defendant's motion [wa]s sufficient to satisfy the *Moore* 'reasonable probability' standard," defendant's due-process argument had not been duly preserved in the trial court, and "defendant [wa]s not entitled to appellate relief under the plain-error test." *People v Kennedy (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued August 6, 2019 (Docket No. 323741) (*Kennedy III*). Judge STEPHENS dissented, opining both that the question of issue preservation was not properly before this Court on remand and that defendant's due-process argument was duly preserved. *Kennedy III*, unpub op at 1-2 (STEPHENS, J., dissenting).

Defendant again sought leave to appeal in our Supreme Court, which issued an opinion on the application (1) reversing the *Kennedy III* majority's determination that the due-process issue was unpreserved, (2) vacating "the remainder" of that majority opinion, and (3) remanding with instructions for this Court to reconsider the issue "under the standard for preserved constitutional error" described in *People v Anderson*, 446 Mich 392, 405-406; 521 NW2d 538 (1994). *People v Kennedy*, ___ Mich ___, ___ (2020) (*Kennedy IV*) (Docket No. 160320); slip op at 1.

After the Supreme Court remanded this matter to this Court in *Kennedy IV*, ___ Mich at ___; slip op at 1, this Court entered an order, sua sponte, directing the parties to file supplemental briefs "specifically addressing the following issue: whether defendant's claim of error concerning his request for a DNA expert constitutes error that is harmless beyond a reasonable doubt." *People v Kennedy*, unpublished order of the Court of Appeals, entered April 30, 2020 (Docket No. 323741).

## II. ANALYSIS

---

[1] CODIS stands for Combined DNA Index System and is a database system where DNA profiled from crime scene evidence are kept.

In its supplemental brief on remand, the prosecution concedes that the trial court erred by refusing to appoint Zubel as a defense expert at state expense, but argues that the state's failure to *pay* for Zubel's services was harmless beyond a reasonable doubt. The prosecution argues, because defendant's trial counsel nevertheless hired Zubel at counsel's own expense for "many hours" of consultation services; "there is zero evidence that even an unlimited consultation—something that an appointment would not have paid for—would have made any difference"; Zubel admitted that the prosecution's DNA evidence was highly inculpatory, stating, "looks like they've got your guy"; "counsel spent a considerable amount of time studying books and other materials to attempt to undermine the People's DNA evidence"; counsel "testified that he was able to use the knowledge he gained to challenge the state's proofs"; and as this Court recognized in *Kennedy III*, unpub op at 5-6, counsel "acknowledged that neither he nor Zubel were able to identify any specific problems with the DNA testing that was performed in this case."

In response, defendant argues that the prosecution failed to carry its burden of demonstrating beyond a reasonable doubt that the trial court's error regarding Zubel was harmless. This is so, defendant contends, because "DNA evidence was the lynchpin of the government's case"; Zubel's further assistance was "critical . . . to trial counsel's efforts to challenge that evidence"; the trial prosecutor strongly emphasized the DNA evidence in the prosecution's opening statement and closing arguments; there was evidence that "another man, Big Mike, was seen with the decedent shortly before her death and said he killed her shortly after her death"; although trial counsel "took the extraordinary step of personally retaining Mr. Zubel for some of the assistance . . . originally sought," counsel "also testified that he was not able to afford to pay for all of the assistance that he required and did not feel confident in his ability to use what he learned . . . to effectively cross-examine the state's experts"; as a result, counsel admittedly failed to understand the content of Zubel's report, which left counsel "ill-equipped to understand and challenge the scientific evidence presented by the state at trial"; counsel was especially unable to challenge the prosecution's Y-STR DNA evidence and to cross-examine the state's experts concerning the "anomalies" cited in Zubel's report; and Zubel's written report is "compelling evidence" that the trial court's error in failing to appoint him as a defense expert was not harmless.

In *Kennedy IV*, ___ Mich at ___; slip op at 1, the Supreme Court specifically directed this Court to reconsider this issue "under the standard for preserved constitutional error." Questions of constitutional law are reviewed de novo. *Kennedy II*, 502 Mich at 213. Applying the standard for preserved, nonstructural,[2] constitutional error in this case, the prosecution—as the beneficiary of the error at issue—bears the burden of demonstrating that the error was "harmless beyond a reasonable doubt." See *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999), citing

---

[2] Notably, in defendant's supplemental brief on remand, he does not contend that the *Ake* error at issue here is structural, i.e., error requiring automatic reversal. See *Anderson (After Remand)*, 446 Mich at 405 (discussing structural error). Hence, defendant has abandoned any such argument. See *People v McGraw*, 484 Mich 120, 131 n 36; 771 NW2d 655 (2009) ("Failure to brief an issue on appeal constitutes abandonment.").

*Anderson (After Remand)*, 446 Mich at 405-406 ("This requires the beneficiary of the error to prove, and the court to determine, beyond a reasonable doubt that there is no reasonable possibility that the evidence complained of might have contributed to the conviction.") (quotation marks, footnote, and citation omitted). In more colloquial terms, the prosecution must prove that the preserved constitutional error "did not tip the scale in the prosecution's favor and contribute to the jury's verdict." *Anderson (After Remand)*, 446 Mich at 407. In analyzing that issue, a reviewing court should examine "the entire record," the nature of the error, and its import in the context of the case as a whole. *Id*. at 406-407 (holding, under the instant standard of review, that the introduction of an inculpatory statement made by the defendant during an unconstitutional custodial interrogation was not harmless error, reasoning: "We reach this conclusion after examining the entire record and considering both the statement itself and its subsequent emphasis in closing argument.")

On remand, we must determine whether the prosecution has carried its burden of demonstrating that the trial court's failure to appoint Zubel as a defense expert was "harmless beyond a reasonable doubt." This Court opines that the prosecution failed to meet its burden.

We reiterate our determination as set forth in *Kennedy III* that the *Moore* standard was met, as we wrote in *Kennedy III*, at 4-5:

> " '[A] defendant [seeking appointment of an expert under *Ake*] must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial.' " *Kennedy II*, 502 Mich at 228, quoting *Moore*, 809 F2d at 712. " 'Thus, if a defendant wants an expert to assist his attorney in confronting the prosecution's proof—by preparing counsel to cross-examine the prosecution's experts or by providing rebuttal testimony—he must inform the court of the nature of the prosecution's case and how the requested expert would be useful.' " *Id*. at 225, quoting *Moore*, 809 F2d at 712. " 'At the very least, he must inform the trial court about the nature of the crime and the evidence linking him to the crime.' " *Id*., quoting *Moore*, 809 F2d at 712. "[T]he defendant's showing must also include a specific description of the expert or experts desired" and "should inform the court why the particular expert is necessary." *Id*., quoting *Moore*, 809 F2d at 712.

In pertinent part, the motion to appoint Zubel stated:

> 1. That . . . the defendant is charged with murder in the first degree.
>
> 2. That the decedent victim is one Tanya Harris, whose body was found in an abandoned building in November 1993.
>
> 3. That the only evidence against the defendant, who is an inmate in the Michigan Department of Corrections, is a test of DNA material performed by one Amy Altesleben, a forensic scientist employed by the Michigan State Police.
>
> 4. That, a prosecution based largely or entirely upon the presentation of identification evidence based upon DNA poses an especially technical and complex

-4-

range of issues for defense counsel, as the essence of the prosecutions' case is the presentation of a report from a qualified technician or scientist. That report is conclusory and counsel who would render constitutionally effective assistance to his client and zealously confront the witnesses and evidence called in the prosecution's case in chief, must be educated and schooled to no small extent in the science and accepted protocols of DNA extraction, preservation, testing, as well as dangers of contamination and the steps and measures taken to document a particular test, and to maintain the proper calibration of testing equipment, all just to some of the areas in which counsel must be prepared to cross-examine.

5. That counsel seeks an order of the court to appoint as an expert in what may be called "DNA litigation" one Brian Zubel of Fenton, Michigan.

6. Mr. Zubel is an attorney licensed to practice in Michigan, who has been a member of the American Academy of Forensic Sciences since 2008. He has presented DNA evidence as a prosecuting attorney in Oakland, Berrien, and Genesee counties and has litigated in similar fashion as an assistant attorney general of the state of Michigan in the case of ***People v Unger*****, 278 Mich App 210 (2008)**.

7. That Mr. Zubel's Curriculum Vitae is attached . . . , as well as a scholarly article from the September 2013 issue of the Criminal Law Section newsletter.

8. That in Wayne County Circuit Court, Mr. Zubel has been recognized as an expert by the Honorable Annette Jurkewicz Berry and by the Honorable Vonda Evans.

9. That, without the active assistance of a learned expert, counsel will not be able to confront the witnesses and to shed light on any questionable issues that may have occurred during the lengthy storage and testing procedures.

Notably, when counsel filed the above motion, he had yet to receive requested discovery materials from the prosecution concerning the DNA "collection/processing/analysis in this case," which counsel had specifically requested at Zubel's recommendation.

We reaffirm our prior conclusion that defendant's motion was sufficient to satisfy the *Moore* reasonable probability standard, particularly in light of the limited discovery concerning the DNA evidence that had been provided to defense counsel at the time the motion was filed. See *Moore*, 809 F2d at 712 n 10 ("The difficulty of the defendant's task will vary depending on the scope of the jurisdiction's discovery rules."). Among other things, the motion informed the trial court of the nature of the prosecution's case, the identity and background of the desired expert, how his appointment would be useful to the defense, and why counsel believed that it was necessary to ensure a fair trial. Moreover, given the highly technical, scientific nature of DNA evidence, that counsel indicated he would be unable to understand that evidence or to meaningfully cross-examine the prosecution's experts concerning it without expert assistance, and that DNA evidence was the sole foundation of the charges against defendant, it seems that defendant demonstrated that there was "a reasonable probability both that an expert would be of assistance

to the defense and that denial of expert assistance would result in a fundamentally unfair trial." See *Kennedy II,* 502 Mich at 227, quoting *Moore*, 809 F2d at 712.

Where the claim of error is preserved and a constitutional error is found it is the prosecution's burden to establish that the error was harmless beyond a reasonable doubt. *Anderson* (*After Remand*), 446 Mich at 405-406.

In *Mathews v Eldridge*, the Supreme Court stated that:

> . . . due process generally requires consideration of three distinct factors: First, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976)].

The private interest at stake here is defendant's liberty and his right to present a defense to the charge against him. These interests have been recognized as substantial. "The interest of the individual in the outcome of the State's effort to overcome the presumption of innocence is obvious and weighs heavily[.]" *Ake*, 470 US at 78.

This is a DNA case. This defendant could not safely proceed to trial without DNA expertise. Nearly two decades ago DNA evidence was collected from the victim, who was both strangled and sexually assaulted. It was only when that evidence was tested that defendant was charged with murder. The age and size of the DNA sample, its storage process and testing methodology were all likely issues of contention in this case. Trial counsel understood that this DNA evidence was the lynchpin of the prosecutions' case and asked the court for the appointment of Zubel, an eminently qualified expert to assist him in preparing his client's defense. Zubel was a former prosecutor who trained prosecutors on litigating forensic science issues in criminal cases. The trial court however, denied Zubel's appointment. The court seemed to presume that despite the scientific nature of the evidence at issue, counsel could prepare for examination of the prosecutions' witnesses and otherwise prepare an effective litigation strategy, including plea considerations, through reading and soliciting the advice of some mythical expert who would consult for free. To the contrary, this is a case like *Ake* where "[w]ithout a[n] [expert's] assistance, the defendant cannot offer a well-informed expert's opposing view, and thereby loses a significant opportunity to raise in the jurors' minds questions about the State's proof of an aggravating factor." 470 US at 84.[3] At trial, the prosecution presented two forensic experts. Through these experts,

---

[3] There can be no doubt that many types of expert witnesses—including DNA experts—have played a pivotal role in criminal proceedings. It is undisputed in this case—and indeed seems beyond dispute—that DNA and other types of experts may sometimes "be crucial to the defendant's ability to marshal his defense." *Id*. at 80 (quotation marks and citation omitted). And, finally, we have yet to discern an exact science on this topic—indeed, the very notion is incompatible with our adversarial system of justice, in which "juries remain the primary factfinders

the jury learned about DNA, different types of DNA testing, the DNA testing results in this case, and the meaning of the test results as applied to defendant.  We cannot conclude that the failure to appoint Zubel to assist counsel was harmless under the test set forth in *Anderson*.

Accordingly, we REVERSE and REMAND for a new trial.  We do not retain jurisdiction.


/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan

---

. . . and they must resolve differences of opinion [among the experts] on the basis of the evidence offered by each party."  *Id*. at 81; see also *Hinton v Alabama*, 571 US 263, 276; 134 S Ct 1081; 188 L Ed 2d 1 (2014) ("Prosecution experts, of course, can sometimes make mistakes.  Indeed, we have recognized the threat to fair criminal trials posed by the potential for incompetent or fraudulent prosecution forensics experts, noting that '[s]erious deficiencies have been found in the forensic evidence used in criminal trials.' . . . This threat is minimized when the defense retains a competent expert to counter the testimony of the prosecution's expert witnesses; it is maximized when the defense instead fails to understand the resources available to it by law."), quoting *Melendez-Diaz v Massachusetts*, 557 US 305, 319; 129 S Ct 2527; 174 L Ed 2d 314 (2009).