*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TONY CLARK,

Defendant-Appellant.

UNPUBLISHED
April 30, 2019

No. 336656
Wayne Circuit Court
LC No. 16-002944-01-FC

ON REMAND

Before: SAWYER, P.J., and MURRAY, C.J., and M. J. KELLY, J.

PER CURIAM.

Defendant was convicted in a jury trial of second-degree murder, MCL 750.317, two counts of assault with intent to do great bodily harm, MCL 750.84, armed robbery, MCL 750.529, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 70 to 105 years' imprisonment for the second-degree murder conviction, 20 to 40 years' imprisonment for each of the assault with intent to do great bodily harm convictions and for the armed robbery conviction, one to five years' imprisonment for the felon in possession of a firearm conviction, and five years' imprisonment for the felony-firearm, second offense conviction. Defendant filed an appeal as of right. On April 12, 2018, this panel issued an unpublished per curiam opinion affirming defendant's convictions and sentences. *People v Clark*, unpublished per curiam opinion of the Court of Appeals, issued April 12, 2018 (Docket No. 336656) (*Clark I*). Defendant filed an application for leave to appeal in our Supreme Court. On December 21, 2018, our Supreme Court entered an order vacating the portion of this panel's opinion that addressed the trial court's denial of defendant's request for the appointment of a defense expert in computer forensics and remanding the case to this Court for reconsideration of that issue in light of the Court's subsequent opinion in *People v Kennedy*, 502 Mich 206; 917 NW2d 355 (2018), in which our Supreme Court recently clarified the appropriate standard to apply when determining whether an indigent criminal defendant is entitled to the appointment of a defense expert at government expense. *People v Clark*, 920 NW2d 578 (2018) (*Clark II*).

In *Clark I*, we rejected all of defendant's appellate arguments. As relevant here, defendant made arguments concerning the loss of video showing the crimes being committed and regarding his request for a defense expert in computer forensics in relation to the lost video. Defendant first contended that he was denied his constitutional right of due process because the police lost the surveillance video showing the crimes being committed. *Id*. at 1. In rejecting defendant's argument, we reasoned, in relevant part:

> Here, defendant has not shown that the lost video evidence was potentially exculpatory or that the police acted in bad faith. In his appellate brief, defendant quotes portions of the grand jury testimony of Detective Gary Przybyla, the officer-in-charge, indicating that the lost video showed defendant committing the crime. At the hearing on defendant's motion to dismiss the charges due to the loss of the video evidence, the prosecutor stated that the video showed someone committing the crime but that "you cannot make out who those people are because it's too dark. The facial features are not clear enough, so it's not exculpatory because it – it's not exculpatory as to this Defendant or anyone else because you really can't see or make out who that person is." In either event, whether the video showed defendant committing the crime or the person committing the crime could not be identified from the video because it was too dark, defendant has not presented any evidence that the video was potentially exculpatory. Nor is there evidence of bad faith on the part of the police. As Przybyla indicated, the video was not downloaded correctly by the police, and the original video was erased by the owner of the VIP club after the police returned the video equipment to the owner. Defendant has offered no evidence contradicting this explanation of how the video was lost. At most, the record reflects negligence on the part of the police in failing to ensure that the video was downloaded correctly before returning the video equipment to the owner of the VIP club. Mere negligence does not constitute bad faith. See [*Arizona v*] *Youngblood*, 488 US [51,] 58[; 109 S Ct 333; 102 L Ed 2d 281 (1988), reh den 488 US 1051; 109 S Ct 885; 102 L Ed 2d 1007 (1989)] (finding no evidence of bad faith where the failure of the police to preserve evidence could "at worst be described as negligent."). Because defendant has failed to demonstrate that the lost video was potentially exculpatory or that the police acted in bad faith, he has not established a due process violation. *Id*. at 57-58; [*People v*] *Heft*, 299 Mich App [69,] 79[; 829 NW2d 266 (2012), lv den 495 Mich 875 (2013)]; [*People v*] *Johnson*, 197 Mich App [362,] 365[; 494 NW2d 873 (1992), lv den 442 Mich 931 (1993)]. [*Clark I*, unpub op at 2-3.]

We also rejected defendant's contention that the trial court abused its discretion in denying defendant's request for the appointment of a defense expert in computer forensics, relying on authorities that were governing at the time of our decision. Specifically, we looked to *People v Carnicom*, 272 Mich App 614, 616; 727 NW2d 399 (2006), for the proposition that "MCL 775.15 provides a trial court with discretion to authorize payment for an expert witness

for an indigent defendant." *Clark I*, unpub op at 5.[1]  We also quoted from our Supreme Court's then-controlling case law for the proposition that, " '[a]s MCL 775.15 makes clear, a trial court is not compelled to provide funds for the appointment of an expert on demand.' "  *Clark I*, unpub op at 6, quoting *People v Tanner*, 469 Mich 437, 442; 671 NW2d 728 (2003), overruled by *Kennedy*, 502 Mich at 225.  We further quoted as follows from *Carnicom*, 272 Mich App at 617, for the then-governing legal principles:

> To obtain appointment of an expert, an indigent defendant must demonstrate a nexus between the facts of the case and the need for an expert.  It is not enough for the defendant to show a mere possibility of assistance from the requested expert.  Without an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness. [*Clark I*, unpub op at 6, quoting *Carnicom*, 272 Mich App at 617.]

Our reasoning for upholding the trial court's denial of defendant's request for the appointment of a defense expert in computer forensics was as follows:

> In this case, defendant asserts that an expert in computer forensics "could have potentially recovered the missing video and could have informed the jury and the judge about how the video was apparently the only video that wasn't downloaded."  However, it was undisputed at trial that, while the police successfully downloaded some footage from the security cameras at the VIP club, the video footage showing the murder was not downloaded correctly.  It is not clear how testimony from an expert on this matter would have aided the defense.  Defendant's suggestion that an expert could somehow have recovered the missing video is pure conjecture.  And even if the video could have been recovered, there

---

[1] MCL 775.15 states:

> If any person accused of any crime or misdemeanor, and about to be tried therefor in any court of record in this state, shall make it appear to the satisfaction of the judge presiding over the court wherein such trial is to be had, by his own oath, or otherwise, that there is a material witness in his favor within the jurisdiction of the court, without whose testimony he cannot safely proceed to a trial, giving the name and place of residence of such witness, and that such accused person is poor and has not and cannot obtain the means to procure the attendance of such witness at the place of trial, the judge in his discretion may, at a time when the prosecuting officer of the county is present, make an order that a subpoena be issued from such court for such witness in his favor, and that it be served by the proper officer of the court.  And it shall be the duty of such officer to serve such subpoena, and of the witness or witnesses named therein to attend the trial, and the officer serving such subpoena shall be paid therefor, and the witness therein named shall be paid for attending such trial, in the same manner as if such witness or witnesses had been subpoenaed in behalf of the people.

is no indication that it would have benefited the defense. Przybyla's grand jury testimony quoted by defendant suggests that the video showed defendant committing the crime, whereas the prosecutor at the motion hearing indicated that the video was not exculpatory with respect to defendant or anyone else because the shooter's identity could not be determined from the video. Defendant has shown nothing beyond the mere possibility of assistance from the requested expert in computer forensics. He has not shown that testimony from such an expert would likely benefit the defense. Thus, he has not shown that the trial court abused its discretion by denying his request for an expert. [*Clark I*, unpub op at 6.]

On remand, our Supreme Court's order directs us as follows:

> On order of the Court, the application for leave to appeal the April 12, 2018 judgment of the Court of Appeals is considered. Pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we VACATE that part of the Court of Appeals judgment addressing the denial of the defendant's request for the appointment of a defense expert in computer forensics, and we REMAND this case to the Court of Appeals for reconsideration of that issue in light of *People v Kennedy*, 502 Mich 206 (2018). With regard to the defendant's remaining issues concerning the video, leave to appeal is DENIED, because we are not persuaded that the questions presented should now be reviewed by this Court. In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court. [*Clark II*, 920 NW2d at 578.]

We again affirm defendant's convictions and sentences because the trial court's denial of defendant's request for the appointment of a defense expert in computer forensics was not erroneous under *Kennedy*.

Whether defendant was denied due process by the trial court's refusal to appoint a defense expert at government expense presents a question of constitutional law that is reviewed de novo. *Kennedy*, 502 Mich at 213. In *Kennedy*, 502 Mich at 210, our Supreme Court determined that MCL 775.15 does not apply in the context of a criminal defendant's request for the appointment of an expert. Instead, the *Kennedy* Court held that the United States Supreme Court's decision in *Ake v Oklahoma*, 470 US 68; 105 S Ct 1087; 84 L Ed 2d 53 (1985), is the controlling law. *Kennedy*, 502 Mich at 210. Also, "to assist trial courts in determining whether a defendant has made a sufficient showing to be entitled to expert assistance under *Ake*, [the *Kennedy* Court] adopt[ed] the reasonable probability standard from *Moore v Kemp*[, 809 F2d 702 (CA 11, 1987), cert den 481 US 1054; 107 S Ct 2192; 95 L Ed 2d 847 (1987)]." *Kennedy*, 502 Mich at 210.

The *Kennedy* Court explained that, in *Ake*, the United States Supreme Court had used the three-factor due process test provided in *Mathews v Eldridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976), when considering whether the indigent criminal defendant in *Ake* was entitled to psychiatric assistance in preparing the defense. *Kennedy*, 502 Mich at 214-215. This three-factor due process test is comprised of the following:

-4-

(1) "the private interest that will be affected by the action of the State," (2) "the governmental interest that will be affected if the safeguard is to be provided," and (3) "the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided." [*Kennedy*, 502 Mich at 215, quoting *Ake*, 470 US at 77.]

With respect to the first two factors, the *Ake* Court observed that both the state and the individual have a compelling interest in the accurate disposition of criminal cases, such that the state interest in denying a criminal defendant the assistance of a psychiatrist is not substantial. *Kennedy*, 502 Mich at 216, citing *Ake*, 470 US at 79. Therefore, the third factor, which concerns the probable value of the requested safeguard, will generally determine whether a defendant is entitled to the appointment of an expert at public expense. See *Kennedy*, 502 Mich at 216-220. The *Kennedy* Court agreed with "a burgeoning consensus that *Ake*'s due process analysis is not limited to psychiatric experts[.]" *Id*. at 219.

The *Kennedy* Court acknowledged that, before its opinion in that case, the Michigan Supreme Court had "not yet acknowledged that *Ake* is the controlling law in this area. Instead, we have analyzed the issue of whether a criminal defendant was entitled to the appointment of an expert witness at public expense under MCL 775.15." *Kennedy*, 502 Mich at 220. The *Kennedy* Court concluded that "MCL 775.15, by its express terms, does not provide for the appointment of expert witnesses." *Kennedy*, 502 Mich at 222. Further, "the statute, which only contemplates 'testimony,' falls short of the constitutional standard set forth in *Ake*, which clearly requires the assistance of an expert in 'conducting an appropriate examination' and 'in evaluation, preparation, and presentation of the defense.' " *Id*. at 223 (brackets omitted), quoting *Ake*, 470 US at 83. The *Kennedy* Court stated:

> We conclude that the Legislature did not intend MCL 775.15 to encompass requests by an indigent criminal defendant for the appointment of an expert at government expense, and we overrule *Jacobsen*[2] and *Tanner* to the extent that they hold or suggest to the contrary. Instead, we hold – as we must – that the *Ake* due process analysis governs such requests. [*Kennedy*, 502 Mich at 225 (citation omitted).]

Because *Ake* did not explain *how* an indigent criminal defendant's showing must be made when seeking the appointment of an expert at public expense, *Kennedy*, 502 Mich at 225-226, the *Kennedy* Court adopted the "reasonable probability" standard articulated by the United States Court of Appeals for the Eleventh Circuit in *Moore*, 809 F2d at 712. See *Kennedy*, 502 Mich at 226-228. In particular, the *Moore* "reasonable probability" standard consists of the following:

> [A] defendant must demonstrate something more than a mere possibility of assistance from a requested expert; due process does not require the

---

[2] *People v Jacobsen*, 448 Mich 639; 532 NW2d 838 (1995), overruled by *Kennedy*, 502 Mich at 225.

government automatically to provide indigent defendants with expert assistance upon demand. Rather . . . a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial. Thus, if a defendant wants an expert to assist his attorney in confronting the prosecution's proof—by preparing counsel to cross-examine the prosecution's experts or by providing rebuttal testimony—he must inform the court of the nature of the prosecution's case and how the requested expert would be useful. At the very least, he must inform the trial court about the nature of the crime and the evidence linking him to the crime. By the same token, if the defendant desires the appointment of an expert so that he can present an affirmative defense, such as insanity, he must demonstrate a substantial basis for the defense, as the defendant did in *Ake*. In each instance, the defendant's showing must also include a specific description of the expert or experts desired; without this basic information, the court would be unable to grant the defendant's motion, because the court would not know what type of expert was needed. In addition, the defendant should inform the court why the particular expert is necessary. We recognize that defense counsel may be unfamiliar with the specific scientific theories implicated in a case and therefore cannot be expected to provide the court with a detailed analysis of the assistance an appointed expert might provide. We do believe, however, that defense counsel is obligated to inform himself about the specific scientific area in question and to provide the court with as much information as possible concerning the usefulness of the requested expert to the defense's case. [*Kennedy*, 502 Mich at 227, quoting *Moore*, 809 F2d at 712 (alterations in original).]

Defendant has not made the requisite showing under the *Moore* "reasonable probability" standard that was adopted in *Kennedy*. Before trial, defendant filed a written motion to dismiss the charges in light of the loss of video evidence, i.e., the failure of the police to properly download the portion of the surveillance video footage that showed the shooting incident forming the basis for the charges against defendant. The motion to dismiss did not request the appointment of a defense expert in computer forensics. At the October 21, 2016 hearing on defendant's motion to dismiss, which was held one business day before the start of the trial on October 24, 2016, defense counsel made an alternative request for an adjournment in order to obtain a computer forensics expert.

In our view, defendant did not make the requisite showing that would entitle him to the appointment of an expert in computer forensics. Initially, it should be noted that defendant never directly asked the trial court for the appointment at public expense of a defense expert in computer forensics. Instead, at the hearing on defendant's motion to dismiss, defense counsel made what she called an "alternative" request for an *adjournment* so that a computer forensics expert could be obtained. Defense counsel did not request that the government pay for the appointment of such an expert. To the extent such a request was implied, it must be emphasized that any such request was tied by defense counsel to her request for an adjournment of the trial that was scheduled to begin on the next business day. In denying the defense request, the trial court stated, "No, absolutely not. I'm going to trial on Monday." In other words, the trial court denied the request for an adjournment, which defense counsel had plainly interwoven with the

request to obtain a computer forensics expert. Defense counsel did not ask for appointed expert assistance in the absence of an adjournment.

Defendant on appeal has provided no basis for concluding that the trial court erred in denying the request for an adjournment, which the defense itself had tied to any implied request for the appointment of an expert. "When an appellant fails to dispute the basis of a lower court's ruling, we need not even consider granting the relief being sought by the appellant." *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015), lv den 499 Mich 882 (2016). Also, defendant has abandoned the issue by failing to present argument or cite authority regarding the adjournment issue that the defense tied to any implied request for the appointment of a computer forensics expert. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

For this reason, we conclude that *Kennedy* does not provide a basis for any additional relief to defendant.

Affirmed.


/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Michael J. Kelly